## Louisville, Henderson & St. Louis Railway Company v. Lyons.

(Decided February 6, 1912.)

Appeal from Meade Circuit Court.

1. Railroad—Crossing Accident—Licensees.—Where there was a foot crossing in front of a passenger depot, over which from 25 to 75 people each day had crossed for many years, this use put upon the company the duty of lookout, warning and reasonable speed in the operation of its trains in reference to this crossing.

2. Same—Duty as to Lookout, Warning and Speed.—Where the duty of lookout, warning and reasonable speed is required, it is negligence to omit the observance of either.

3. Same—Foot Crossing in Front of Depot—Warning.—Where the use by the public generally of a path across the tracks in front of a depot was such as to put upon the company the duty of anticipating the presence of persons on the track at this place, the fact that its station whistle was sounded several hundred feet from the depot was not sufficient warning to persons on this crossing.

4. Same—Contributory Negligence—Effect of.—Although a railroad company may be guilty of negligence, yet if the injured party is guilty of such contributory negligence as that except for his negligence the accident would not have happened, he cannot recover.

5. Same—Contributory Negligence—Question for Jury.—Where a traveller approaching a public crossing stopped and looked for a train, when one hundred feet from the crossing, but did not afterwards stop or look or listen while walking towards the track, and he was struck by a passing train at the crossing, he was not guilty of such contributory negligence as would defeat a recovery.

6. Same—Duty of Traveller at Crossing.—The stop, look and listen rule does not prevail in this State, but it is the duty of travellers approaching a crossing to exercise ordinary care to discover the approach of trains.

R. A. MILLER, JAMES R. SKILLMAN and C. M. FINN for appellant.

CLAUDE MERCER and N. McC. MERCER for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In March, 1911, the appellee, Hettie Lyons, was struck by one of appellant's trains. To recover damages for the injuries received, she brought this action against the company, and on a trial before a jury recovered a verdict for $2,000. A reversal of the judgment entered on this verdict is asked upon the ground that the trial court should have directed a verdict in favor of appellant. This is the only error complained of, and its consideration involves a somewhat detailed statement of the facts shown by the record and the law applicable thereto.

The appellee lived in the town of Guston, in Meade County, on the line of the appellant's railroad. The depot at Guston is situated on the south side of the railroad, as is practically all of the town, which contains about 150 inhabitants, and it was on this side of the railroad Mrs. Lyons lived. Immediately across from the depot on the north side of the track and close to it, there was a ditch made by the railroad company on its right of way, and across this ditch a plank bridge had been put in front of the depot for the use and accommodation of persons living on the north side of the railroad track as well as of persons who desired to go to and from that side. This bridge, which was about eight feet long and seven feet wide, had been there for many years, and although it does not appear that the company built it, there is evidence that its employes at one time repaired it. And it is also shown that from 25 to 75 people walked across the track and over this bridge each day. It was at this bridge that appellee was struck just as she was in the act of going from it on to the track. On the morning she was injured she left her house and crossing the railroad track on this bridge to the north side, went to a smoke-house owned by Mr. Neff, who lived close to and on the north side of the track about

100 feet west of the depot. On her way home from the smoke-house, and after leaving the yard gate at Neff's house, she walked with her back to the approaching train in a path leading from Neff's gate to the bridge crossing, that run rather parallel with the railroad and a few feet from it. She testifies that she did not hear the approach of the train or any bell ringing or the whistles that were sounded for the station or the road crossing west of it, and, it is also in evidence that there was a strong wind blowing in a direction that would carry the noise of the approaching train and the sound of the signals from the place at which appellee was. She further said that when she got on this path on her way towards the bridge crossing, that she looked west in the direction in which this train was coming, but did not see it, and then proceeded to walk towards the track without stopping or looking again. The train which struck appellee consisted of an engine, two tenders, and two cars, and was going east. The train was running backwards, that is to say, the two tenders were in front of the engine, and the cars that the engine was pulling were coupled to the front end of the engine. There is some conflict in the evidence as to the speed of the train. The witnesses for appellee say that it was running about 35 miles an hour, while the trainmen say the speed was about 25 miles an hour. The weight of the evidence conduces to show that the engine bell was not ringing, as the train approached the depot crossing, although the trainmen say that it was. It is conceded that no whistle was sounded for this depot crossing except an alarm whistle about the time the appellee was struck, but several witnesses testified that they heard the usual station signal sounded several hundred feet west of the depot, and also the customary crossing signals for a public road crossing that was several hundred feet west of the depot. It is not seriously contended that the whistles were not sounded at these places; nor is it denied that the engineer was keeping a lookout; and, he said he saw appellee while she was walking towards the track but did not anticipate that she would get close enough to be struck by the train and so did not sound the alarm whistle or attempt to stop the train until about the time she was struck.

Upon this state of facts it is the contention of counsel for the railroad company, first, that appellee was a trespasser, and second, that she was guilty of such con-

tributory neglect as should defeat a recovery in her behalf. While it is insisted for appellee that in going on the track at this place she was a licensee and entitled to the protection afforded licensees, and that the question of whether she was guilty of such contributory neglect as would defeat a recovery was properly left to the jury.

It is often a very difficult question to determine from the facts whether a person crossing or traveling on a railroad track at places other than public crossings is to be treated as a trespasser or a licensee, and the solution of this question in cases of this character is always important because of the difference in the duty owing by the company to trespassers and licensees. To the trespasser no duty is owing except to exercise ordinary care to avoid injury to him after his peril is discovered; while to the licensee, that is a person having the right to use the track, there is due the duty of lookout, warning and reasonable speed. So many persons using the tracks of railroad companies are injured and killed by moving trains that we have had occasion to consider questions like those here presented in a large number of cases; but it is rare that the facts in any two of them are precisely alike, so that each case must in a great measure be determined by the facts it presents, although there are certain general principles applicable to all cases of this class. Here the accident occurred immediately at one of appellant's passenger and freight depots at a place that was so habitually and continuously used as a crossing by the public that the appellee had the right as a licensee to use the track and right of way of the company in going from one side of the track to the other, as she was doing when the injury happened. Of course, every path across a railroad track, although it may be used by many persons each day does not put upon the company the duty of treating the users as licensees. It is a common thing to find such pathways at many places on every railroad, and if the company was required to slow down and give warning at all of these places, it would unreasonably interfere with the use of its own premises and seriously impair its efficiency in the discharge of its public duties. Chesapeake & Ohio Ry. Co. v. Nipp, 125 Ky., 49. But the use of this crossing for many years by large numbers of the public had impressed it with the character of a public way, and so the company in the operation of its trains was required to anticipate the presence of travelers at this place and to

govern the movement of its trains accordingly. We are largely influenced to reach this conclusion by the fact that this place was in a small town, immediately in front of a regular passenger depot of the company, and where the company by permitting the plank bridge to be built and remain on its right of way for the use of the public had recognized the right of the public to use its track—in fact, invited them to do so; and, having done this, it can not say that persons so using its track at this place were trespassers.

There is no similarity whatever between the facts in this case and the facts in Hughes v. L. & N. R. Co., 23 Ky. Law Rep., 2288, cited by counsel for appellant, and, the Hughes case is not at all in conflict with the views we have expressed.

The next question is, in what respect was the company guilty of negligence. We have pointed out that the use of the track by the public at the time and place appellee was injured put upon the company the duty of anticipating the presence of persons on the track, and this duty imposed upon those operating the train the further duty of keeping a lookout, giving warning of the approach of the train, and operating it at a reasonable rate of speed. And this duty was violated not only by the speed at which the train was running, but especially by the failure to give warning by ringing the engine bell or sounding the whistle for this particular crossing. It is true the great weight of the testimony conduces to show that the usual station and crossing signals were given some 900 feet west of the depot, but these signals did not sufficiently discharge the duty the company owed to give warning of the approach of its trains to this depot crossing. It is true that the engineer was keeping a lookout, but the lookout alone did not satisfy the requirements we have imposed in cases of this character. The lookout answers one purpose, the warning another, and the control of the speed yet another; and, it often happens that the observance of either without the observance of all will not afford the required or indeed any protection. The lookout is primarily to enable the trainmen to control the movement of the train when they discover danger, while the warning is to give the traveler notice to keep out of the way, and the control of the speed is designed to make both the lookout and the warning more effective. In this case, for example, the fact that the engineer was keep-

ing a lookout did not do any good, as at the speed the
train was going he did not discover the peril of appellee
in time to warn her of danger or avoid the accident. In
other cases, as in C. & O. Ry. Co. v. Banks, 144 Ky., 137,
it is the lookout that affords the most protection, and in
others like I. C. R. Co. v. Murphy, 123 Ky., 787, it is the
failure to run the train at a reasonable speed that most
largely contributes to the accident. So that, in one
case the lookout may be the most important duty, while
in another the warning may be the most important, and
in yet another the rate of speed the most important.
As a result of this condition, we have in a long line of
cases ruled that the concurrent duty of lookout, warn-
ing and reasonable speed must be observed and that the
failure to perform either one of these duties, is actionable
negligence when the failure is the proximate cause of
the injury. We have here then a case in which the look-
out duty was observed, but the requisite warning was
not given and the speed of the train was not reasonable.
But, passing the question of the speed of the train, it
may safely be said that the company was negligent be-
cause of the failure of the trainmen to give warning of
the approach of the train to this depot crossing. The
fact, however, that the company was negligent in the
particulars named does not fix liability upon it for the
injury to appellee if she was guilty of such contributory
neglect as that except for her negligence the accident
would not have happened. C., N. O. & T. P. Ry. Co. v.
Yocum, 137 Ky., 117. On the subject of appellee's neg-
ligence, the argument is made that the track on which the
train was approaching was straight for a distance of
seven or eight hundred feet west of the depot, and that
if appellee had exercised ordinary care to discover the
approach of the train she could not fail to have seen it
before going on the track. Appellee, according to the
uncontradicted evidence, did look in the direction the
train was coming, when she was about 75 feet from the
crossing, but not seeing it or hearing it, she proceeded
on her way. The reason she did not see the train when
she looked is probably due to the fact that on account
of a curve about 800 feet west of the station the train
had not yet come in sight when she looked. After the
train came around the curve and on to the straight
stretch of track, between the curve and the depot, it was
going at such a high rate of speed that it run the dis-
tance of 800 feet from the curve to the depot in about

the same time it took appellee to go the 75 or 100 feet from the point where she looked to the crossing. Of course, if appellee had looked just before or as she stepped on the crossing bridge, she could have seen the train, which was then only a few feet distant and have avoided the injury. Now, was her failure to do this such contributory negligence as would defeat a recovery, or, was it for the jury to say whether she exercised ordinary care to discover the approach of the train. She testifies that her hearing was good, and that she did not hear the signals that were sounded for the station or the road crossing, or any bell ringing or the train coming, and that when she looked and did not see any train she believed the way was safe and gave the matter no further attention. It is not of course to be assumed or indeed believed that appellee purposely put herself in the way of this train or that she would have gone on the track if she had known the train was coming, and we think that when she looked for the approaching train a short distance from the crossing and did not see or hear it, she had the right to assume that no train was coming or that if one was coming it would give warning of its approach to the depot by ringing the bell; and, that the jury were authorized under this state of facts to find as they did appellee exercised ordinary care to discover the approach of this train. It is also a matter worthy of notice that it is usual and customary for all trains passing passenger depots to ring the engine bell, and there is evidence that this custom was followed at Guston and appellee says that not hearing any bell or seeing any train, she did not anticipate that any train was coming. It is also true that trains, although running at a high rate of speed, often make little noise, and persons who are in the habit of crossing the track at places where it is usual to ring the engine bell have the right to depend on this warning to give them notice, as the engine bell makes a sound that can often be heard much further than the sound made by the moving train. While as said in C. & O. Ry. Co. v. Patrick, 135 Ky., 506:

"We do not mean to be understood as holding that one, in crossing or going upon a railroad track, where he is entitled to go or be, should neglect the use of his faculties, or fail to exercise any reasonable precaution that would enable a person of ordinary prudence under the circumstances to discover the approach or presence of a

moving train and thereby prevent injury to his person." * * *

We yet think that when appellee looked for this train at the time and place she did, she was not required again to stop or look or listen before going on the track, or conclusively guilty of negligence because she went on the track without discovering the approach of the train.

A case in many of its features like this, is that of Davis v. L., H. & St. L. Ry. Co., 30 Ky. Law Rep., 172. In that case Mrs. Davis was struck in the daytime by an engine at a place where she was licensed to use the track. The defense was made there, as it is here, that although the employes of the company were negligent in failing to give warning of the approach of the train by ringing the bell, that Mrs. Davis could have discovered its approach by the exercise of ordinary care and thereby have avoided injury to herself; and it was insisted that because of her failure to discover its approach and keep off the track, she could not recover.

But the court said:

"It may be set down that when persons approach and attempt to cross a railroad track in cities and towns and public crossings, where they have a right to cross, and where the presence on the track of persons should be anticipated, and when they will not be trespassers in so doing, they may rely upon the fact that some lookout will be kept or warning given of the approach of trains to the place; and in the absence of any warning signal that a train is approaching, it is not conclusive evidence of negligence for the injured person to go upon the track, although by looking or listening an approaching train might be seen or heard, as it will not be assumed that a person will deliberately walk in front of a passing train. If the rule were adopted as a matter of law that a person could not recover who went upon a railroad track at a public crossing without observing an approaching train, when it might have been seen by looking or listening, although the company failed to give any warning signal of its approach, or keep any lookout, the result would be that in almost every case of personal injury the company, however remiss in its duty, would be exonerated from liability." To the same effect is Perkins v. C. & O. Ry. Co., 123 Ky., 229.

Another case very similar is L. & N. R. Co. v. McNary, 128 Ky., 408. In that case, Mary McNary, a woman about 70 years old, was walking along a path

that crossed the railroad track in a small mining town. She had on a bonnet and was not looking for the train, and just as she walked on the track she was struck and killed by a fast passenger train. After setting up the facts showing that Mrs. McNary was a licensee in the use of the track at this place, the court in answer to the contention of the railroad company that her own negligence in failing to exercise ordinary care to discover the approach of the train was the cause of the accident, said:

"The woman manifestly could have seen the train if she had looked in that direction just before she went upon the track, but she had a right to assume that notice of the approach of a train would be given; and where proper signals are not given this court has held in a number of cases that the question whether the traveler used ordinary care is for the jury. * * * To hold as a matter of law that the footman is guilty of contributory negligence barring a recovery for his injury whenever he goes upon a railroad track without stopping, looking, or listening would be practically to exempt railroads from all responsibility in cases of this sort; for there are few cases indeed where the footman if he stopped, looked, or listened could not save himself by stepping to one side and waiting for the train to pass. But the fact is that a person thinking of his own business is sometimes unmindful of where he is. and will get on the railroad track before he is aware of it, or he will from other causes be endangered from passing trains. So it is that in crowded localities, when the presence of persons on the track is to be anticipated, a lookout is required of those operating trains, and notice of their approach and such moderation of speed as will make a lookout and signals of the train's approach available for the safety of the traveling public. In each case the question whether the traveler used proper care will depend on a number of circumstances, such as the number of trains passing, the warning of the train's approach, and the circumstances surrounding him."

Many other cases announcing a similar rule might be cited, but we think these are sufficient to show that the evidence authorized the court to leave it to the jury to say whether or not the negligence of appellee or the company was the cause of the injury; and, as this and the other issues were properly submitted, the judgment is affirmed.