## ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY v. KIMBRELL.

### Opinion delivered March 22, 1915.

1. EVIDENCE—EXPERIMENTS—PERSONAL INJURY ACTION.—In an action for damages resulting to plaintiff, who was struck at a crossing by a moving train, testimony of a witness that the approaching train could not be seen at the point near the track where plaintiff stopped to look and listen, is admissible, where witness derived his information under conditions substantially like those existing at the time of the accident.

2. EVIDENCE—WHEN NOT UNCONTRADICTED—OPERATION OF TRAIN—WARNING SIGNALS.—Although the engineer and fireman on a railway locomotive both testified that the whistle was blown and the bell rung upon approaching a crossing, the testimony will not be regarded as uncontradicted, where several persons near the crossing, and who were in a position to make accurate observations, state that the whistle was not blown nor the bell rung.

3. RAILROADS—PERSONAL INJURIES—SPEED OF TRAIN.—In an action for damages to plaintiff, by being struck by a moving train at a crossing in a town, the speed of the train may be considered by the jury in determining the issue of defendant railway company's negligence, although the speed of the train alone, would not show liability.

4. RAILROADS—DUTY OF TRAVELER AT A CROSSING.—A traveler approaching a railroad crossing must take notice of the fact that it is a place of danger, and must not only look and listen for the approach of trains, before he goes upon the track, but must continue to look and listen until he has passed the point of danger.

5. RAILROADS—DUTY OF TRAVELER AT CROSSING.—It is the duty of a traveler, upon approaching a railroad crossing, to stop, to look, and to listen, and that duty must be performed at such a time and place, with reference to the particular situation in each case involved, as will enable him to accomplish the purpose the law has in view in imposing such duty upon him.

Appeal from White Circuit Court; *J. M. Jackson,* Judge; affirmed.

*E. B. Kinsworthy, P. R. Andrews, Troy Pace* and *T. D. Crawford,* for appellant.

1. The testimony of R. B. Campbell as to the experiment made by him was erroneously admitted. Such testimony is not admissible unless the experiment was made

under substantially the same conditions as existed at the time of the accident.    115 Ark. 101.

2.    Counsel contend that the court erred in refusing to give instructions 21, 22 and 24, as stated in the opinion, but cite no authorities.

3.    The court erred in refusing to direct a verdict for the appellant.    Appellee, as the evidence shows, was guilty of contributory negligence.    If, as he says, he stopped fifteen or twenty feet from the sidetrack and could not see because the box cars cut off his view, and could not hear because a gravel train near him was making so much noise, it was his duty to go to a place from which he could see before venturing into a place of such obvious danger.    106 Ark. 399; 32 L. R. A. (Ind.) 151.

There is no proof of negligence on the part of appellant.    There is affirmative proof, not only by the testimony of the engineer and fireman but also by other witnesses, that the statutory signals were given while the testimony to the contrary is purely of a negative character.    9 Enc. of Evidence, 866; 17 Cyc. 800; *Id.* 804; 6 How. 589; 130 Fed. 65; 60 N. Y. 133; 101 Mich. 234; 159 Mass. 320; 54 Fed. 301; 19 Ill. 499, 71 Am. Dec. 236; 18 Ill. App. 404; 61 Wis. 391; 19 Am. & Eng. R. Cas. 276; 98 Wis. 157; 212 Pa. St. 409; 109 Am. St. 872; 128 Wis. 357; 17 Wall. 385; 27 Hun, 325; 7 Ark. 470; 24 Ark. 140; 50 Ark. 477.

*S. Brundidge* and *J. W. & J. W. House, Jr.,* for appellee.

1.    R. B. Campbell's testimony was clearly admissible.    42 Ark. Law Rep. 101.

2.    The court properly refused to give instructions 21, 22 and 24, requested by appellant.    The testimony, which is substantially the same as when this case was before the court on former appeal, warranted a finding that the train was running at an unusually high rate of speed, and the speed of the train was a proper element for the jury to consider with other facts in proof in determining appellant's negligence.    This instruction is in direct conflict with the former opinion.    111 Ark. 134.    Instruction 24 seeks to impose on appellee a degree of care which the

law does not contemplate nor require.   90 Ark. 19; 99
Ark. 167; 97 Ark. 411; 100 Ark. 62; 88 Ark. 530; 79 Ark.
157; 76 Ark. 224; 76 N. E. 804; 51 N. E. 708; 62 S. W. 94;
61 S. W. 147; 8 Atl. (Pa.) 789, 790; 147 Mass. 495; 34 Ia.
158; 111 N. Y. 419; 88 Am. Dec. 356; 14 Abb's Practice R.
N. S. 29; 30 N. Y. 11; 89 Hun, 596; 23 N. Y. Sup. 193; 116
Mass. 540.

3.   The contributory negligence of appellee was a
question for the jury, and was submitted to them under
proper instructions.   It would not have been proper to di-
rect a verdict, unless reasonable minds could have reached
but one conclusion from the evidence.   89 Ark. 534; 90
Ark. 33; 16 L. R. A. (Mo.) 189; 20 Atl. 976; 53 N. Y. 654;
96 N. Y. 676; 78 Ark. 520; 125 N. Y. 526; 26 N. E. 741;
27 Atl. 847; 158 Pa. St. 82; 67 Barb. (N. Y.) 205. 206; 32
How. Pr. (N. Y.) 61; 94 Mo. 150; 52 Mo. 25⁹ 45 Am. &
Eng. Ann. Cases, 163; 61 Cal. 326; 56 Ark. 459.

HART, J.   Joe W. Kimbrell sued the St. Louis, Iron
Mountain & Southern Railway Company to recover dam-
ages for injuries sustained by him while driving a two-
horse wagon across the railroad tracks of defendant at
a public crossing in Beebe, a town of 1,800 or 2,000 inhab-
itants.   He was alone in the wagon, and stopped his team
ten or twelve feet before he reached a sidetrack on which
were stored some box cars which obstructed his view
toward the south.   He looked up and down the track the
best he could for the approach of trains, and also listened
for the approach of them.   Not seeing or hearing any
trains, he drove across the sidetrack and on to the main
track where his wagon was struck by a fast mail train ap-
proaching from the south.   The train was running at a
high rate of speed.   The steam had been cut off and this
caused the smoke to blow back as soon as it came out of
the smokestack, and also caused the train to make much
less noise in running than usual.   The plaintiff was se-
verely injured and his mules killed by the train striking
them.   The crossing in question was on the most traveled
street in Beebe.   The bell was not rung, and the whistle
was not blown for the crossing, according to witnesses

who observed the train approach and saw the accident, until just as the train struck the plaintiff's wagon.

On the other hand, the engineer and fireman testified that the whistle was blown at the whistling post, and that the bell was kept ringing from there until the wagon was struck by the train; that they did not see the plaintiff or his wagon until just as they were struck, because the view was obstructed by the box cars on the sidetrack. The jury returned a verdict for the plaintiff, and the defendant railroad company has appealed.

It is first earnestly contended by counsel for the defendant that the evidence is not sufficient to warrant a verdict. This is the second appeal in the case. The opinion in the former appeal is reported in 111 Ark. at page 134. The facts on the present appeal are not essentially different from those on the first appeal. We then held that there was sufficient testimony to warrant the jury in finding that the defendant was guilty of negligence, and that the plaintiff was free from contributory negligence. Therefore, it is unnecessary to again discuss that question. The facts are set forth more in detail in the former opinion, and reference is made to that opinion now.

It is also insisted that the court erred in admitting the testimony of R. B. Campbell as to experiments made by him. This witness was allowed to testify that he stood out ten, fifteen or twenty feet from the sidetrack at the crossing where the plaintiff was injured with several box cars extending down from the crossing, and was unable to see a train approaching from the south; that one of the box cars which obstructed his view was about ten feet from the crossing, and the others a little further down.

(1) There was no error in admitting this testimony. According to the testimony of the plaintiff and of the other witnesses who saw the accident, this was about the position plaintiff was in when he stopped to look and listen for approaching trains. The experiment was made by the witness to test the accuracy of the plaintiff and his witnesses who observed the accident, and was made under conditions substantially the same as those at the time

the accident happened. *St. Louis, I. M. & S. Ry. Co. v. McMichael,* 115 Ark. 101.

(2)   It is next insisted that the court erred in refusing to give instruction No. 22, asked by the defendant. This instruction in effect told the jury that under the uncontradicted evidence in the case, the statutory warnings for the crossing were given, that is, that the whistle was blown and the bell rung, and that the plaintiff having failed to establish this allegation of negligence, could not recover on that charge of negligence.

The court did not err in refusing to give this instruction. In the first place, it may be said that the uncontradicted evidence does not show that the bell was rung, and the whistle blown for the crossing. It is true that both the engineer and the fireman stated that such was the case, and it is also true that the witnesses for the plaintiff on cross examination say that they may be mistaken in testifying that the whistle was not blown or the bell rung for the crossing as the train approached. But these same witnesses testified on direct examination that they were looking at the train as it approached, and did not hear the whistle blown or the bell rung. One of the witnesses stated positively that he was observing the train, and knew that the bell was not rung, and the whistle was not blown. Under these circumstances it can not be said that the testimony of the plaintiff's witnesses as to this matter was of such a negative character that it did not contradict the testimony of defendant's witnesses. According to the testimony of plaintiff's witnesses, they were giving such attention to the approach of the train that the jury might well have found that they might reasonably have been expected to notice whether the whistle was blown for the crossing or whether the bell was ringing as the train approached the crossing. Moreover, under the opinion on the former appeal, this testimony was admissible on the question of plaintiff's contributory negligence. He testified that his view toward the south was obstructed by box cars, and that when he stopped, and could not see in that direction, he listened, and did not hear the statutory warnings of an approaching train.

(3)    Again it is contended that the court erred in refusing to give instruction No. 21 asked for the defendant. This instruction reads as follows:

"You are instructed that the plaintiff alleges negligence on the part of the defendant railway company on account of running its train at a high and unusual rate of speed through the town of Beebe at the time the plaintiff was injured. The court instructs you that the plaintiff has failed to establish this allegation of negligence, and the plaintiff can recover nothing on account of this allegation of his complaint."

The court did not err in refusing to give this instruction. Some of the witnesses for the plaintiff testified that the train was running at an exceedingly high rate of speed. On the former appeal this court held that the speed of the train was a proper element of consideration under the circumstances of the case, though the speed of the train alone would not be sufficient to establish liability if all other precautions were observed by those in charge of the train. The testimony was competent to be considered by the jury in determining the question of the defendant's negligence and the instruction asked by the defendant would have taken the consideration of that fact away from the jury.

Finally, it is insisted by counsel for the defendant that the court erred in refusing to give instruction No. 24, asked by the defendant. That instruction is as follows:

"You are instructed that the only other allegation of negligence charged by the plaintiff in his complaint is that the defendant company left empty box cars standing on its sidetracks, on both sides of the crossing where he was injured, which obstructed the view of the plaintiff, and prevented his seeing the approach of the train from the south which struck and injured him. The court instructs you that, although you may find from the evidence in this case that the plaintiff, before going upon the crossing where he was injured, stopped, looked and listened for the approach of the train from the south, and in both directions, still, if you find that the plaintiff stopped at a point

where his view was entirely obstructed, when he looked south, that it was his duty, before going upon the crossing, to go to some point of view where he could see whether or not a train was approaching the crossing over which he was about to pass. What the law requires is, that a person about to cross a street crossing shall stop, look and listen at such a time and place as will enable him to determine whether or not he is going into a place of danger; and, if you find from the evidence in this case that the plaintiff stopped, looked and listened just before approaching the crossing where he was injured, and could not see the train on account of the depot, and other obstructions on or near the defendant's sidetracks, and then failed to go to some point where he could discover the approach of said train, this would amount to contributory negligence on the part of plaintiff, and he can recover nothing in this action, and your verdict shall be for the defendant.''

It will be noted that instruction No. 24 is in its nature peremptory and in effect formulates a rule that if the view of the track is obstructed, a traveler should get down from his vehicle and go to a point where he can see both up and down the track. This rule has never prevailed in this State. *St. Louis, I. M. & S. Ry. Co.* v. *Stacks,* 97 Ark. 405; *Ark. Cent. Ry. Co.* v. *Williams,* 99 Ark. 167; *St. Louis, I. M. & S. Ry. Co.* v. *Garner,* 90 Ark. 19; *St. Louis, I. M. & S. Ry. Co.* v. *Prince,* 101 Ark. 315.

To hold that the traveler should in every instance leave his team standing unprotected on the highway, and walk ahead of it to look up and down the track before driving upon it, would be more likely to cause accidents in many cases than to prevent them.

In the case of *C., O. & G. Rd. Co.* v. *Baskins,* 78 Ark. 355, the court said:

(4)    ''The doctrine has been repeatedly stated by this court that a traveler approaching a railroad crossing must take notice of the fact that it is a place of danger, and must not only look and listen for the approach of trains before he goes upon the track, but must continue

to look and listen until he has passed the point of danger. He must continue his vigilance until the danger is passed, and must look both ways, up and down the track.''

(5)  This proposition has been so frequently declared by the court that further citation of authorities in support of it is useless. It is clear that the duty to stop, to look and to listen, if need be, must be performed at such a time and place, with reference to the particular situation in each case involved as will enable a traveler to accomplish the purpose the law has in view in imposing such duty upon him.

The court in numerous concrete instructions given at the request of the defendant submitted to the jury the question of the defendant's negligence and of the plaintiff's contributory negligence in accordance with the principles of law just announced. Moreover, at the request of the defendant, the court gave instruction No. 10, which reads as follows:

''The court instructs you that if you find from the evidence that plaintiff's view south of the crossing, where he was injured, at the time when he was injured, was obstructed by cars standing on the sidetracks near the crossing, that the duty devolved upon him to use a higher degree of care of stopping, looking and listening for the approach of trains for the purpose of ascertaining whether or not he was going into a place of danger by undertaking to cross the tracks; and, if you find from the evidence that the plaintiff was trying to determine whether or not a train was approaching by looking and listening in both directions, and was unable to see same on account of the obstructions on the track, then it was the plaintiff's duty to use the highest degree of care by stopping, looking and listening for the approach of trains; and, if he failed in this, your verdict should be for the defendant.''

The court also gave instruction No. 15, which, in effect, told the jury that if it found that plaintiff's view of the railroad track south of the crossing where he was injured was obstructed by box cars which prevented him seeing the approach of the train which injured him, yet

if the jury should find that the plaintiff, before going upon the track by listening for the train could have heard the same in time to have avoided his injury, then the plaintiff's failure to ascertain the approach of the train by listening for the same would be such contributory negligence as would bar his right to recover.

We have carefully examined the record, and find no prejudicial error therein.

It follows that the judgment must be affirmed.