MISSOURI PACIFIC RAILROAD COMPANY *v.* MITCHELL.

Opinion delivered March 8, 1926.

1. RAILROADS—KILLING ANIMALS—CONTRIBUTORY N E G L I G E N C E.— Where plaintiff's team, being hitched near a railroad track, got loose somehow and went upon defendant's track and were killed, it was error to submit to the jury the question of plaintiff's contributory negligence; but, where defendant requested such issue to be submitted, it cannot complain that its request was modified by instructing that plaintiff's negligence would be no defense if the accident was caused by defendant's failure to keep a lookout.

2. RAILROADS—KILLING OF ANIMALS—PRESUMPTION.—Proof that plaintiff's animals were killed by a moving train constituted *prima facie* evidence of negligence on defendant's part in managing the train, and imposed the burden on it to disprove such negligence.

3. RAILROADS — NEGLIGENCE — EVIDENCE.—In an action for killing plaintiff's team, evidence *held* to support a finding that defendant's trainmen were guilty of negligence in not keeping a lookout.

Appeal from Conway Circuit Court; *J. T. Bullock,* Judge; affirmed.

STATEMENT BY THE COURT.

D. B. Mitchell sued the Missouri Pacific Railroad Company to recover $475 in damages, the value of a mule, horse and buggy which were killed and damaged by defendant's moving passenger train on its track in the town of Menifee, Conway County, Ark.

According to the testimony of D. B. Mitchell, he was a rural mail carrier, and the owner of the team and buggy which was run into by one of the defendant's fast passenger trains at the town of Menifee, Ark., about seven o'clock A. M. on August 5, 1922. The passenger train struck the team between the crossing and the depot. The team was a gray mule and a white horse, and they were hitched to a double buggy at the time the train struck them. The witness went down to the postoffice about six o'clock in the morning to fix up the mail, and his boy brought the team down and hitched it in front of the postoffice. The train struck the team close to a post where it picks up the mail when the train does not stop. The gray mule was worth $125, and the white horse about $85. The buggy was worth about $30, and the harness about $20 or $25. The engineer could have seen the team on the track about 3,000 feet away. There was no curve at all from the station back towards where the train was for 1,750 feet. The team was forty or fifty feet south of the public crossing at the station at the time the train struck it.

Joe Talley was also a witness for the plaintiff. According to his testimony, as he came out of a store, he heard the noise of an approaching train, and, looking down the track, saw the horses on it. The mule and the horse were on the railroad track looking towards the approaching train. Two wheels of the buggy were on the track. You can see stock on the track 3,000 feet away; from the west, which was the direction from which the train was approaching. Some time after the accident happened, the witness stationed himself on the railroad track in the direction from which the train was approaching, and could see a horse standing on the track where the horses in question were struck, 3,000 feet away. The witness did not hear the engineer blow the whistle or ring the bell as it approached the station.

According to the testimony of M. B. Rieff, he was the engineer on the train in question, and it was running

about 45 or 50 miles an hour at the time it approached Menifee. Menifee was not a stop for the train, but he whistled for the road crossing and started his bell ringing. When he was about 100 or 150 yards from the station, he saw a team close to the track headed towards him, but it did not look like it was on the track. There was a curve in the track, and he looked around again. He then saw that the team was on the track, and did all that he could to stop the train. He was keeping a lookout in front of him as he came around the curve towards the station. As soon as he saw that the team was loose, and not in charge of any one, he did all in his power to stop the train.

The testimony of the engineer was corroborated by that of other witnesses for the defendant.

The jury returned a verdict in favor of the plaintiff in the sum of $125, and from the judgment rendered the defendant has duly prosecuted an appeal to this court.

*Thomas B. Pryor* and *Vincent M. Miles,* for appellant.

*Edward Gordon,* for appellee.

HART, J., (after stating the facts). At the request of the defendant the court gave instructions Nos. 7 and 8, which read as follows:

"No. 7. You are instructed in this case that, where no person is injured, but only property is damaged, the defense of contributory negligence is an absolute defense, and, although you may find that the defendant was guilty of negligence, yet, if you find that the plaintiff was guilty of any negligence contributing to the damage, your verdict must be for the defendant, notwithstanding the negligence of the defendant, unless you find that the accident was caused by failure of keeping a constant lookout."

"No. 8. You are instructed that if the act of the plaintiff or his son in permitting said team to become loose and wander upon the railroad track was the proximate cause of the damage, and that the negligence of the

defendant was not the proximate cause of the damage, your verdict must be for the defendant.''

After counsel for the defendant had argued the case, the court modified instruction No. 8 to read as follows:

''You are instructed that, if the act of the plaintiff or his son in permitting said team to become loose and wander upon the railroad track was the proximate cause of the damage, and that the negligence of the defendant was not the proximate cause of the damage, your verdict must be for the defendant, unless you find that the cause of the accident was defendant's failure to keep a lookout.''

The sole reliance of counsel for the defendant for a reversal of the judgment is that the court erred in modifying instruction No. 8.

It is the contention of counsel for the defendant that the court correctly instructed the jury on the question of the plaintiff's contributory negligence in instructions Nos. 7 and 8, as originally given, and that the modification of instruction No. 8 had the effect to eliminate the defense of the contributory negligence of the plaintiff. In other words, it is insisted that by modifying instruction No. 8 the court confused the defense of whether or not the negligence of the defendant was the proximate cause of the injury with the plea of the contributory negligence of the plaintiff.

We can not agree with counsel in this contention. The mule and horse were not in the immediate care, custody or control of the plaintiff or his son when they went upon the track. According to the plaintiff's testimony, which is not contradicted, his son brought the team down and hitched it to a post near the postoffice in the town of Menifee. In some way not explained the team got loose and went upon the railroad track. There was no other testimony submitted to the jury upon this question, and we are of the opinion that the court erred in submitting to the jury the contributory negligence of the plaintiff. The error in submitting the question of contributory

negligence was committed at the request of the defendant, and it can not therefore be prejudiced by it.

The question then remains whether or not the court erred in modifying instruction No. 8, when considered without regard to the question of contributory negligence. The undisputed evidence shows that the animals were killed by the moving passenger train, and this fact constituted *prima facie* evidence of negligence on the part of the defendant in managing its train, and the burden devolved upon the defendant to show that it was not negligent in the premises. The question of whether the defendant's servants were keeping a lookout, as required by the statute, was properly supmitted to the jury.

The question whether or not the engineer did all in his power to keep from injuring or killing the animals after he discovered that they were on the track was also properly submitted to the jury. Of course, according to the evidence of the engineer, the defendant was not negligent in this respect. According to his testimony, there was a slight curve in the track as the train approached the station at Menifee, and he at first thought that the animals were hitched to a vehicle in charge of some one near the track. He had whistled for the crossing, and was ringing the bell. Menifee was not a stop for his train, but, as soon as he saw that the team was on the track and not in charge of any one, he did all in his power to stop the train and to prevent hitting the team. His testimony, however, on this point is not undisputed. According to the testimony of the plaintiff and of a witness for him, the engineer could have seen the animals on the track at a distance of 3,000 feet, and could have stopped the train in time to have avoided injuring them. In this connection it may be stated that the color of the mule was gray, and of the horse white. The engineer did not ring the bell or sound the whistle. The jury might have inferred that, had he given warning by a blast of the whistle, this would have scared the team,

and made it get off of the track; or the jury might have found that, had he been keeping a lookout, the engineer could have discovered the team on the track in time to have stopped the train, and to have avoided hitting it.

It follows that the judgment must be affirmed.