MISSOURI PACIFIC RAILROAD COMPANY *v.* ROGERS.

Opinion delivered November 23, 1931.

728

*Thos. B. Pryor* and *H. L. Ponder*, for appellant.

*Miller & Yingling* and *Tom W. Campbell,* for appellee.

HART, C. J., (after stating the facts). This case was not brought under the lookout statute or under the failure of the railroad to give the statutory signals by ringing the bell or sounding the whistle for a public crossing. It was based upon the alleged negligence of the railroad company at common law in the operation of its train as it approached the public crossing in the town of Garner and struck and killed Mrs. Rogers while she was on the public crossing there going across the railroad tracks, and also upon the doctrine of discovered peril.

In a case note to 7 Ann. Cas., at page 990, in discussing the question of the speed of the train as negligence in the absence of a prohibitory statute in connection with precautions, the annotator announces the general rule to be as follows: "Where it appears that no warning was given of the approach of a train to a crossing, the speed at which such train was moving is an essential element for the consideration of the jury in determining whether the company used due care under the circumstances." 22 R. C. L., § 243, p. 1012, and 52 C. J., § 1527, pp. 242, 244.

In discussing the same question in Ann. Cas. 1914B, at page 604, it was said that recent cases are in accord to the effect that, where no warning is given of the approach of a train to a crossing, the speed at which the train is moving is of material consideration on the question of negligence. The annotator further stated that the relation which the speed of a train bears to the various precautions which may be taken to avert an accident at a crossing was well stated in *Louisville, H. & St. L. Ry.*

*Co.* v. *Lyons,* 146 Ky. 603, 143 S. W. 31, where the court said:

"The lookout answers one purpose, the warning another, and the control of the speed yet another; and it often happens that the observance of either without the observance of all will not afford the required or indeed any protection. The lookout is primarily to enable the trainmen to control the movement of the train when they discover danger, while the warning is to give the traveler notice to keep out of the way, and the control of the speed is designed to make both the lookout and the warning more effective. In this case, for example, the fact that the engineer was keeping a lookout did not do any good, as at the speed the train was going he did not discover the peril of appellee in time to warn her of danger or avoid the accident."

Among the numerous cases cited in favor of the rule laid down by the annotator is *St. L. I. M. & S. Ry. Co.* v. *Kimbrell,* 111 Ark. 134, 163 S. W. 513. In that case, the court said that the unusual speed of the train was a proper element of consideration under the circumstances of the case, although the speed of the train alone would not be sufficient to establish liability if all other precautions were observed by those in charge of the train. It is true that this case was decided after the passage of our lookout statute and after the passage of our statute requiring the blowing of the whistle and the ringing of the bell for a certain stated period before reaching a crossing; but the principle would be the same. In the absence of a statute requiring such provisions to be given, the railroad would not be allowed to operate its train at a rapid rate of speed over a public crossing in a town or a village where it might be supposed that people would be constantly going across the tracks at a public crossing without giving any warning or signal of any kind of its approach. In that case, the court recognized that, when the accident happens in a populous town, the jury might find that it constituted negligence to run the train at a rapid rate of speed without giving any kind of warning of its approach.

This same rule was again recognized upon the second appeal in that case, reported in 117 Ark. 457, 174 S. W. 1183. Where public necessity and convenience may require the operation of trains at a high rate of speed through cities and towns, yet such speed may be found by the jury to be an element of negligence where no warning is given of the approach of the train.

In the present case, the engineer and fireman both testified that they were observing the statutory signals for the approaching crossing by blowing the whistle and ringing the bell; but other witnesses testified that these statutory signals or warnings of the approach of the train to the crossing were not being given. They testified that they were at places where they heard such signals given by the train approaching from the south and did not hear any signals from the train coming from the north, either by ringing the bell or blowing the whistle. They were in possession of their faculties of hearing and would have heard the signals had they been given. Hence their testimony was not negative testimony, but was of affirmative character, to be given such weight as the jury might attach to it. *St. L. I. M. & S. Ry. Co.* v. *Kimbrell,* 117 Ark. 457, 174 S. W. 1183; *St. L. S. F. Ry. Co.* v. *Horn,* 168 Ark. 195, 269 S. W. 576; *St. L. S. F. Ry. Co.* v. *Haynes,* 177 Ark. 104, 5 S. W. (2d) 737; C. R. I. & P. Ry. Co. v. *Thomas, ante* p. 457.

Again, the engineer and fireman testified that they were keeping a lookout; but, as we have already seen, that alone would not satisfy the requirement in cases of this sort. The jury might have found from the testimony a state of facts as follows: Mrs. Rogers' attention was attracted to the train from the south by the giving of the statutory warnings of its approach, by the bell ringing and the whistle blowing, and, not hearing any whistle blowing or bell ringing on the train from the north, her attention was concentrated on the train from the south, and the fireman or engineer keeping the lookout observed this and should have given a short blast of the whistle, which might have attracted her attention so that she would have quickened her pace and stepped

from the place of danger to a place of safety. It will be remembered that the witnesses testified that she did not quicken her steps, and that one or two steps would have carried her to a place of safety. It is true that the witnesses testified that the train from the north did sound the blast of the whistle at a public crossing a half a mile north of the crossing at Garner, but they said that the whistle was not sounded or the bell rung any more after the first blast of the whistle was given. Hence the jury might have inferred that, although Mrs. Rogers might have heard this, when she heard the train approach from the south, she thought she was mistaken about having heard the whistle from the north, and that her safety lay in watching the train from the south. The jury were the judges of the credibility of the witnesses, and the weight to be given to their testimony; and, under the circumstances, it cannot be said as a matter of law that the railroad company was free from negligence, and that the negligence of Mrs. Rogers was greater than that of the railroad company.

While public convenience and necessity may require the running of trains through cities, towns and populous communities at a high rate of speed, yet the rapid rate of speed in connection with other facts and circumstances, such as the failure to give any warning whatever of the approach of the train to a public crossing and the like, is for the consideration of the jury in determining whether the railroad company was guilty of common-law negligence; and the conduct of its employees as a whole constituted negligence at the common law, which was the proximate cause of the injury in cases like this.

In this connection, it may be stated also that error is claimed on account of the admission by the court of evidence as to the position of gravel cars on the switching or storage track east of the main tracks. It will be remembered that one of the gravel cars was north of the public crossing at Garner, and the other three were south of it. We do not think there was any error in this respect. It tended to show that Mrs. Rogers' vision was to some extent obstructed by the position of these gravel cars;

and, as their position with reference to the crossing at Garner was definitely stated, the jury could intelligently tell what, if any, obstruction to the vision of Mrs. Rogers was occasioned by their position.

It is also insisted that the court erred in submitting to the jury the question of comparative negligence under § 8575 of Crawford & Moses' Digest. The section reads as follows:

"In all suits against railroads, for personal injury or death, caused by the running of trains in this State, contributory negligence shall not prevent a recovery where the negligence of the person so injured or killed is of less degree than the negligence of the officers, agents or employees of the railroad causing the damage complained of; provided, that where such contributory negligence is shown on the part of the person injured or killed, the amount of recovery shall be diminished in proportion to such contributory negligence."

This was an independent act passed by the Legislature of 1919 and constituted a modification of the common-law doctrine of contributory negligence. It will be noted that the section expressly provides that in all cases against railroads for personal injury or death, caused by the running of trains in this State, contributory negligence shall not prevent a recovery where the negligence of the person so injured or killed is of less degree than the negligence of the railroad company. There is nothing whatever in the language of the statute which would confine it to cases brought against the railroad under the lookout statute or under the statute for the failure to give signals for the approach to a public crossing. No reason is assigned why the language of the statute should not be construed according to its ordinary meaning and be applied to all suits of this sort against railroads, and we can perceive none. Therefore we are of the opinion that the statute applies, and that the court correctly instructed the jury on the question of contributory negligence according to its provisions.

As we have already seen, the case was also submitted to the jury under the doctrine of discovered peril. On

this branch of the case but little need be said. Before the passage of our statute on comparative negligence, the court held that the doctrine of contributory negligence could not be used as a defense after the consequences of plaintiff's negligence had been discovered and when the injury might still have been avoided, had the defendant used ordinary care appropriate to the subject-matter, being greatest, of course, where human life is in danger. *St. L. I. M. & S. Ry. Co.* v. *Freeman,* 36 Ark. 41.

Again, in *Little Rock & Fort Smith Ry. Co.* v. *Cavanesse,* 48 Ark. 106, 2 S. W. 505, the court said that the negligence of a plaintiff makes no difference where the direct cause of the injury complained of is the omission of the defendant, after becoming aware of the injured party's negligence, to use a proper degree of care in avoiding the consequence thereof.

In the case of *C. R. I. & P. Ry. Co.* v. *Elzon,* 132 Ark. 431, 200 S. W. 100, the court said that the doctrine of discovered peril is well settled in this State, and is to the effect that, when a traveler is discovered in a perilous position on or near the railroad track by the engineer on a moving train, it is his duty to use every reasonable precaution, consistent with the proper operation and management of their train, to avoid injuring the traveler. See also *Huff* v. *Mo. Pac. Rd. Co.,* 170 Ark. 665, 280 S. W. 648, and *St. L. S. W. Ry. Co.* v. *Simpson, ante* p. 633. Many other cases, applying the doctrine according to the facts of the particular case by this court, might be cited, but we deem such course unnecessary.

As a general rule, the engineer in a case of this kind might assume that a person, before starting across the track and while crossing it, would exercise due care and caution for his own safety. The case at bar, however, presents the question to be determined by a jury as to whether or not, under all the facts and circumstances here, the engineer and fireman knew of the impending peril of Mrs. Rogers, and that she was unaware of it, and should have given warning by a blast of the whistle or by ringing the bell, or by checking the speed of the train when he saw that Mrs. Rogers would likely reach a dan-

gerous position on the crossing which she was unaware of, and which would result in her injury or death. Hence the jury might have found that the train operatives were negligent in the performance of their common-law duty in the premises, by not at least sounding the whistle, one blast of which might have prevented the injury.

It is also claimed that the court erred in not transferring the case to the Federal court, and on this point but little need be said. The case was removed to the Federal court and was remanded by it to the State court. It is well settled by the decisions of this court, and by the decisions of the Supreme Court of the United States, that where a case was removed to the Federal court and was remanded to the State court, the propriety of the remanding order will not be reviewed in the State court. *K. C. So. Ry. Co.* v. *Wade,* 132 Ark. 551, 201 S. W. 787; *Powers* v. *Chesapeake & O. Ry. Co.,* 169 U. S. 92, 18 S. Ct. 264; *McLaughlin Brothers* v. *Hallowell,* 228 U. S. 278, 33 S. Ct. 465; *Mo. Pac. Ry. Co.* v. *Fitzgerald,* 160 U. S. 556, 16 S. Ct. 389; *Pacific Live Stock Co.* v. *Lewis,* 241 U. S. 440, 36 S. Ct. 637; and *Yankaus* v. *Feltenstein,* 244 U. S. 127, 37 S. Ct. 567.

The case was fairly tried before a jury under the principles of law applicable to the allegations of negligence relied upon for recovery, and was heard upon competent testimony. Therefore the judgment will be affirmed.