MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE, *v.* ROGERS.

4-7276                                   178 S. W. 2d 667

Opinion delivered March 13, 1944.

*Henry Donham* and *Leffel Gentry,* for appellant.

*J. H. Lookadoo,* for appellee.

KNOX, J. On the night of the 18th of January, 1942, a wagon and team of mules owned by appellee were struck by appellants' passenger train No. 3, traveling from Little Rock to Texarkana, at a crossing in the town of Curtis, Arkansas. The mules were killed and the wagon demolished.

Appellee had traveled in his wagon to church, which was a short distance west of the railroad tracks, and

while he was in church the team of mules became unfastened and proceeded down the road which crosses over the railroad tracks. The railroad tracks run generally north and south through the town of Curtis and are straight as they approach the crossing. The team of mules and wagon approached the crossing from the north.

Three alleged acts of negligence were set out in the complaint as follows: (1) running the train at a high, excessive and dangerous rate of speed; (2) without keeping a lookout for persons or property approaching the crossing, and (3) failing to ring a bell or blow a whistle, or give any warning of the train's approach.

At the close of the testimony, the trial court by proper instruction withdrew from the consideration of the jury allegations of negligence one (1) and two (2) with respect to the speed of the train, and, also, with respect to keeping a lookout, and limited the inquiry of the jury respecting negligence to the allegation pertaining to the failure to ring the bell and blow the whistle.

From a judgment against them appellants prosecute this appeal, urging as the sole ground for reversal the alleged error of the trial court in refusing to give their requested peremptory instruction.

At the trial appellee called as a witness one Hugh Patton, who testified; that he lived in a house which was located about seventy-five yards from the crossing; that at the time of the collision he was looking out of his window; that he could not see the crossing, but could hear the train and see lights from it as it approached the crossing, and immediately after it had passed the crossing the train came into his view. The witness testified the whistle was not blown and that he did not hear a bell ringing. Being further questioned relative to the bell he stated: "I didn't hear it, but there was nothing to keep me from hearing it." Admitting that the windows and doors of his house were closed and that he was inside the house he said: "But there wasn't anything in there to keep me from hearing it." The witness answered

"no, sir" to the following question propounded by counsel for appellants: "But as I understand it, you are not positive, and you do not testify positively that the bell wasn't ringing?"

Appellants concede that the testimony of this witness to the effect that the whistle was not blown amounts to substantial evidence of that fact, but they say "under the circumstances this testimony (which is all that the record discloses tending to show that the bell was not rung) is not substantial evidence that the bell was not being sounded."

Basing their argument upon the premise that under the provisions of § 11135 of Pope's Digest, the burden rested upon appellee to show not only that the whistle was not blown, but also that the bell was not rung, appellants contend that the court should have directed a verdict in their favor for want of substantial evidence tending to prove that the bell was not sounded.

This argument rests upon the theory that the testimony relating to the ringing of the bell is negative in its character and, therefore, wholly lacking in evidentiary value. Many decisions of this court may be found declaring the rule to be, that where a witness, in possession of his faculties of hearing, was so situated that he would have heard signals had they been given, testifies that he heard no such signals, such testimony cannot be classed as negative in its character. Such testimony is treated as being affirmative testimony, tending to establish the fact that such signals were in fact not given, and is entitled to such weight as the jury sees fit to give it. *Fort Smith & Western Ry. Co.* v. *Messeck,* 96 Ark. 243, 131 S. W. 686, 966; *Chicago, Rock Island & Pac. Ry. Co.* v. *Thomas,* 184 Ark. 457, 42 S. W. 2d 762, and cases therein cited; *Mo. Pac. R. R. Co.* v. *Rogers,* 184 Ark. 725, 43 S. W. 2d 757, and cases therein cited.

Appellants recognize the rule of these cases, but argue that the rule should not be applied here, because they say: "The physical facts reveal that in all probability he (Patton) could not hear the bell on account of being in his home, 75 yards away from the crossing, in

the opposite direction from which the train was coming, with his windows and doors shut; and (especially so since) there was other positive evidence of an outside witness, not connected with the railroad, that the bell was ringing as the train approached the crossing, which was corroborated by the testimony of the engineer of the locomotive of the train."

These were matters for consideration of the jury in determining the weight which should have been given to the testimony. *Sibley* v. *Ratliffe,* 50 Ark. 477, 8 S. W. 686. We conclude, therefore, that there was substantial evidence that neither signal was given, *i. e.,* neither the bell was rung nor the whistle blown, as the train approached the crossing.

The facts in the case at bar are quite similar to the facts disclosed in the case of *Mo. Pac. R. R. Co.* v. *Mitchell,* 170 Ark. 689, 280 S. W. 627. There, as here, a team had become unfastened from a hitching post, and, drawing a vehicle to which it was hitched, wandered onto the railroad at or near a crossing and was struck and killed by a moving train. There as here the engineer saw the team before striking it. There as here there was testimony to the effect that the engineer did, and, also, that he did not ring the bell; and, also, that he did and did not sound the whistle. The court held that the facts required submission of the issue to the jury. That it was for the jury to determine whether the statutory signals were given, and if not given, then whether the injury was the result of the failure to give such signals. In that case Mr. Justice HART, speaking for the court, said: "The jury might have inferred that, had he (the engineer) given warning by a blast of the whistle, this would have scared the team, and made it get off the track; . . ."

The facts in the case at bar lead to the same conclusion as was reached in the case of *Mo. Pac. R. R. Co.* v. *Mitchell, supra.* The judgment is, therefore, affirmed.

HOLT, J., (dissenting). I cannot agree with the majority view. But one issue was submitted to the jury and

that was whether there was negligence on the part of the railroad company in failing to blow the whistle or ring the bell. The verdict of the jury in this case is based solely on the negative testimony of Hugh Patton, the only witness offered by appellee. This witness testified: "Q. Can you tell the jury whether or not before the train ran into the team the whistle blew or the bell rang? A. It didn't blow any whistle. The first time the whistle blew was when it stopped down there about a mile and backed up. . . . Q. And you say it didn't ring any bell? A. I couldn't swear about the bell, but it didn't blow the whistle. Q. You didn't hear any bell? A. No, sir. . . . Q. How far is your house from the railroad track? A. I figure it is about 75 yards. . . . Q. What were you doing on the night of the collision? A. I was there in the house. . . . Q. Did you have the windows and doors closed? A. Yes, sir. . . . A. The whistle didn't blow. Q. The whistle did not blow? A. No, sir, it sure didn't. That is one thing I do know. . . . Q. On the question of the bell, you didn't hear it. It could have been ringing? A. It is like I said while ago. I didn't hear it, but there was nothing to keep me from hearing it."

I understand the rule to be that negative testimony may become substantial and sufficient to support the verdict, but this is so only when the evidence shows that the witness could have heard, or was in a position to hear, the ringing of the bell, if it were ringing at the time. In other words, the effect of the negative evidence of such witness must be that there was in fact, nothing to prevent his hearing the bell had it been rung.

In the instant case, appellant's engineer testified positively that the bell was ringing. A disinterested witness, who resided closer to the point of collision than appellee's witness, Patton, also testified positively that the bell was ringing and that he was in bed in his home at the time.

It seems to me that when we give to appellee's witness, Patton, its strongest probative force, the most that can be said of it is that he did not know whether the bell

was rung or not, for the obvious reason that at the time he was in his home with the doors and windows all closed, and that he answered truthfully when he said: "I couldn't swear about the bell, but it didn't blow the whistle," and further "The whistle didn't blow. . . . That is one thing I do know."

It seems to me that we would be stretching the weight and effect to be given to negative evidence to the breaking point to permit the judgment in the instant case, which is based upon Patton's testimony, to stand. His testimony is not substantial in any sense of the word. To affirm this case, I think it would be necessary for us to adopt the scintilla rule. "We have never adopted the scintilla rule in this state, but have uniformly held that there must be some evidence of a substantial character to uphold a verdict of the jury or the finding of fact made by a court sitting without a jury." *The Henry Wrape Company v. Cox,* 122 Ark. 445, 183 S. W. 955.

I think the judgment should be reversed and the cause dismissed.

Mr. Justice McFADDIN joins me in this dissent.