### KUGLER v. WHITE et al.

No. 11525—Opinion Filed June 26, 1923.

**1. Railroads—Parties Defendant in Action for Wrongful Death — Federal Control Act.**

The act of Congress of March. 21, 1918, known as the Federal Control Act, construed as in no wise changing the local rule permitting an offending employe to be made a codefendant with his employer.

**2. Same—Effect of General Order of Director General.**

The order promulgated by the Director General of Railroads on October 28, 1918, and known as General Order No. 50, construed, and, held, that such order did not place a limitation upon the number of joint tort-feasors that may be joined as defendants in an action where a carrier. corporation is one of such defendants, but had the effect of requiring the action to be prosecuted against the Director General instead of the carrier corporation.

**3. Same—Employe as Joint Tort-Feasor— Waiver of Exemption.**

The order promulgated by the Director General of Railroads on October 28, 1918, and known as General Order No. 50, examined, and, held, that if the order was intended as a limitation as to the number of defendants, it could have no greater effect than to create in favor of the employe a personal privilege or exemption which he could waive. Held, in this case that if such was the effect of the order, that such privilege was waived when not asserted in the trial court.

**4. Evidence—Negative Testimony — Weight and Sufficiency.**

Where a witness did not know of the existence of an alleged fact, or did not observe an alleged happening, coupled with inability to know whether the fact existed or whether the thing happened, it constitutes negative testimony, which has no probative force and does not require the submission of the matter to the jury.

**5. Same—Positive Testimony.**

When a witness was in a position to make observation as to whether a certain fact existed or a certain thing happened, and he testified that he did not know of the existence of the fact or did not observe that the thing happened, his testimony is not negative, but has probative force and must be submitted to the jury.

**6. Trial — Verdict — Answers to Special Interrogatories—Action  Against  Railroad for Wrongful Death.**

The general verdict returned by the jury in favor of the plaintiff and the negative answers to special interrogatories propounded, as to whether the whistle was sounded or the bell rung by the engineer in charge of the train, were in effect a finding by the jury that the failure to ring the bell or blow the whistle as required by law was the direct and proximate cause of the injury complained of.

**7. Appeal and Error—Assignment of Error Waived.**

Assignments of error not argued in the brief of plaintiff in error will be treated as waived in the appellate court.

**8. Appeal and Error—Review—Questions of Fact—Verdict.**

Where a cause is submitted to a jury, they are the triers of the facts, and it is not the province of the appellate court to weigh the evidence, and if there is any evidence in the record reasonably tending to support the verdict and judgment, and no substantial errors appear upon the trial, the judgment should not be disturbed on appeal.

**9. Same.**

Record examined, and held, that no substantial error appears in the trial in the court below, and that there is evidence in the record reasonably tending to support the verdict and judgment.

(Syllabus by Shackelford, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Custer County; Thos. A. Edwards, Judge.

Action of Della Lee White, administratrix of the estate of N. P. H. White, deceased, for and on behalf of Della Lee White, widow, and for and on behalf of the children and next of kin of the deceased, against the United States Railroad Administration, Walker D. Hines, Director General, the Chicago, Rock Island & Pacific Railroad Company, a corporation, and F. C. Kugler. Judgment in favor of plaintiff and against the United States Railroad Administration, Walker D. Hines, Director General, and F. C. Kugler. F. C. Kugler appeals. Affirmed.

C. O. Blake, K. W. Shartel, and W. R. Bleakmore, for plaintiff in error.

E. L. Mitchell for defendant in error.

Opinion by SHACKELFORD, C. The defendant F. C. Kugler appeals from the judgment of the district court of Custer county, wherein the plaintiff, Della Lee White, administratrix of the estate of N. P. H. White, deceased, obtained a judgment against the plaintiff in error and against the United States Ralroad Administration, Walker D. Hines, Director General, for the sum of $30,000 because of carelessness and negligence in striking the deceased, N. P. H. White, on a public railroad crossing between Indianapolis and Clinton, Okla., stations on the Chicago, Rock Island & Pacific Railway in Custer county, Okla.

John Barton Payne, Director General of Railroads, agent of the United States under the provisions of the transportation act of 1920, filed a cross-petition in error.

This action was begun in the district court of Custer county by the plaintiff on the 20th day of February, 1919. The petition charges that N. P. H. White received injuries at a public crossing on the C., R. I. & P. Railway on the 31st day of July, 1918, by being struck by an engine and cars being operated on the said railway, by reason of which injury he shortly thereafter died. That the operatives of the train were negligent and careless in that they ran the engine and cars upon and across the crossing as a high and dangerous rate of speed and negligently and carelessly omitted, while approaching said crossing, to give any signal by ringing the bell or sounding the whistle, or otherwise, although the railway company had neither gates nor flagman at the crossing, and that such carelessness and negligence was the proximate cause of the injury.

The defendant railway company answered by general denial, and affirmatively pleaded that it was not in charge of the operation of the road, since it had been taken over by the Director General of Railroads on the 31st day of December, 1917, and that it was being operated by him at the date of the injury.

The railroad administration answered by general denial, and a plea of contributory negligence. The defendant F. C. Kugler answered by general denial.

The cause was tried to a jury on the 13th day of November, 1919. Upon the announcement of rest by the plaintiff, each of the three defendants demurred to the plaintiff's evidence, for the reason that the evidence was insufficient to prove a cause

of action in favor of plaintiff and against the defendants.

The demurrers were overruled as to the Railroad Administration and F. C. Kugler, and sustained as to the railway corporation for the reason that the operation of the road had been taken over by the railroad administration and was not being operated by the company.

The trial resulted in a verdict for the plaintiff, and damages fixed at the sum of $30,000. Defendants Railroad Administration and F. C. Kugler filed separate motions for new trial, which were overruled, and judgment for the plaintiff entered.

The plaintiff in error, F. C. Kugler, sets out and argues three specifications of error in his brief.

"(1) The court erred in refusing to set aside the verdict of the jury as it was requested to do, for the reason that said verdict was contrary to law, and in conflict with and contrary to the instructions of the court.

"(2) The court erred in overruling defendant Kugler's demurrer to the evidence.

"(3) The court erred in refusing to direct a verdict in favor of the defendant Kugler."

We shall examine the propositions argued by the plaintiff in error under paragraphs 2 and 3 of the specifications of error first.

Under the second and third paragraphs of the specifications of error, the question is raised that under the Federal Control Act of March 21, 1918, General Order No. 50, of the Director General of Railroads, promulgated October 28, 1918, F. C. Kugler was not a proper party defendant.

It will be borne in mind that F. C. Kugler, the plaintiff in error here, was the engineer in charge of the engine which killed the plaintiff's intestate. In the brief of the plaintiff in error it is said:

"No action for injuries or death, caused by the negligent operation of a railroad during federal control, could be brought or maintained against the employes of the Director General of Railroads."

The reason why this matter was never suggested to the trial court is not easy to see. We have searched the record carefully for any suggestion to the court that might have been made in the trial of the case below, that the Federal Control Act had taken away the right to sue an employe of the railroad along with the company itself. There seems to be no dispute

that under the local rule the engineer, situated as was Kuglèr, would be a joint tort-feasor along with his employer, and suit might be prosecuted against him as such, or that he might have been sued alone for the injury. Under our statutes he could have been arrested and prosecuted for the commission of crime in his failure to ring the bell and blow the whistle.

We do not question the validity of the Federal Control Act, nor that of General Order No. 50, made by the Director General, but we think the Federal Control Act and General Order No. 50 do not have the far-reaching effect that is claimed by the plaintiff in error. There seems to be nothing in the Federal Control Act that changes the local rule. The act provided:

"That carriers, while under federal control, shall be subject to all laws and liabilities as common carriers, whether arising under state or federal laws, or at common law, except in so far as may be inconsistent with the provisions of this act, or any other act applicable to such federal control or with any order of the President."

Under the state law, the local rule, the employe might be sued as a joint tort-feasor with his employer corporation. There was no inconsistency with the control act in joining the employe with the Director General and the corporation itself as codefendants, and it seems it was generally thought that the proper procedure was to join the Director General and the corporation as codefendants. It was not often that an employe was also joined, but there was nothing in the local rule to prevent it. Notwithstanding the Control Act, suits were still being filed against the railway corporations, so the Director General thought it necessary to promulgate an order directing the procedure in so far as carrier corporations were concerned.

We will examine General Order No. 50, made by the Director General, directing how suits were to be brought, for the purpose of seeing, as best we may, about what he had in mind, and what, probably, it was he was trying to remedy. He tried to make it clear that since the federal government had taken over the operation of the railroad properties, and that the owners, the carrier corporations, were not in possession, and while the Federal Control Act was in effect, that the Director General had the sole control and management of the properties, and the carrier corporations should not be sued, but that in filing suits, the Director General should be

substituted for the carrier corporation. That was certainly not a subversion of any local rule permitting the employe to be made a codefendant, but it would have the effect of making the employe a codefendant with the Director General instead of with the carrier corporation. Nothing was said about whether employes could or could not be sued, but the Director General found that the corporations themselves were still being sued. In promulgating Order No. 50, the Director General, in part, said:

"Whereas since the Director General has assumed control of said system of transportation, suits are being brought and judgments and decrees rendered against carrier corporations on matters based on causes of action arising during Federal control for which the said carrier corporations are not responsible, and it is right and proper that the actions, suits, and proceedings hereinafter referred to, based on causes of action arising during or out of Federal control should be brought directly against the said Director General of Railroads and not against said corporations."

The Director General found that suits were still being brought against the carrier corporations. He said nothing about suits being brought against "carrier corporations" and offending employes. His idea was to leave out the carrier corporations because they could be in no way liable when the Director General and his employes were controlling and operating the properties. He said:

"It is right and proper that * * * suits * * * should be brought directly against said Director General of Railroads and not against said corporations."

This, in effect, said that the carrier corporations should not be made a party defendant, but the Director General should be sued instead of the carrier corporation. This falls short of the far-reaching effect that is sought to be given this language by the plaintiff in error. There could have been no purpose in the mind of the Director General of limiting the matter of parties defendant as to numbers. It is not in the language used and before it can be construed as a limitation upon the number of parties defendant, something must be read into the language that the Director General did not say. The language used cannot reasonably be construed as saying that, where, but for the Federal Control Act, and this General Order No. 50, a plaintiff had a cause of action against a carrier corporation and a number of individuals or other corporations, suit must

be lodged against the Director General alone. Now, having in mind that the Director General found it right and proper that he should be sued instead of the carrier corporation, we shall see what was the language of the order:

"It is therefore ordered, that actions at law, suits in equity, and proceedings in admiralty, hereafter brought in any court based on contract, binding upon the Director General of Railroads, claim for death or injury to person, or for loss and damage to property, arising since December 31, 1917, and growing out of the possession, use, control or operation of any railroad system of transportation by the Director General of Railroads, which action, suit or proceeding but for federal control might have been brought against the carrier company, shall be brought against William G. McAdoo, Director General of Railroads and not otherwise; provided, however, that this order shall not apply to actions, suits or proceedings for the recovery of fines penalties and forfeitures."

The plaintiff in error wants us to construe the words of this order "and not otherwise" as meaning that during the time the order was in effect, a plaintiff could not maintain a suit on a claim arising out of the operation of a railroad against anybody except the Director General, regardless of whether there were other joint tortfeasors. We think the language is not susceptible of this construction. It manifestly means that where a claim has arisen that, but for the order, should be prosecuted against the carrier corporation, it must be prosecuted against the Director General instead of the carrier corporation. The construction sought to be placed upon the language goes much farther than that. The plaintiff in error would have us say that such a claim must be prosecuted against the Director General instead of the carrier corporation, and that no other corporation or individual can be joined with him as a codefendant.

We think the language means that in all such cases the Director General is to be substituted as a party defendant for the carrier corporation, and that its effect ends there. It is far short of being a limitation placed upon the plaintiff as to the number of entities he makes parties defendant. We think the language cannot be a limitation upon the number of joint tort-feasors sued, when one, but for the order, would be the carrier corporation. Putting it another way, we think Mr. McAdoo was in no wise interested in who should be made defendants, but was directing that he should be named

instead of the carrier corporation so long as the order was in effect. To illustrate the point we make, we will suppose that a claimant was injured because of the combined negligence of employes of a carrier corporation and the employes of a city electric railway company, and has an equally good cause of action against each company. Under the local rule he might sue either one or both of them. In such a case, could the effect of General Order No. 50, issued by the Director General, be to say to the plaintiff that he must not join the Director General with the other offending corporation, but must sue him alone, and if he wishes to prosecute his cause against the city railway company he must sue in a separate action. We are inclined to the idea that the Director General had no such thing in mind. If the order is to be construed as a limitation upon the number of defendants, regardless of legal liability, it is not very wonderful that several of the courts of last resort have held the order invalid and void, and if we thought that the Director General intended such a meaning by this order, we would have little hesitancy in saying that the order was void in so far as it was intended as any such limitation. But, when the order is construed to mean that the Director General intended to say that when the complaining party desires to sue a carrier corporation that he should be made a party defendant instead of the carrier corporation, regardless of whom else may be made a defendant, then the order is reasonable and well within his rights under the Federal Control Act. Such construction of the order is reasonable and within the language used; while the construction contended for seeks to have us read something into the order beyond the language used, and something that we think was beyond the authority of the Director General to direct.

This construction is not in conflict with any construction placed upon general order No. 50 by any court in any case that we have found.

In the Missouri cases hereinafter cited, the court seems to have tacitly accepted the construction placed upon the language of the order by the appellants without going into the matter. In one case they held the employe because the question had not been raised in the court below, and in the second case, where the question was raised in the court below, they let the employe out.

We are of the opinion that if the question had been raised in the court below, that it

would not have been error for the trial court to overrule the demurrer of the employe on that ground alone. This because we think that General Order No. 50 issued by the Director General did not change the local rule authorizing a suit against the offending employe as well as against his superior.

However, even though the language of General Order No. 50 may not be susceptible of the construction herein enunciated, still we do not see how the construction insisted upon can avail the plaintiff in error here.

Plaintiff in error cites Caldwell v. Payne (Mo.) 246 S. W. 312, as conclusive on the point he makes, that the suit cannot be prosecuted against the Director General and the employe because the court in that case said:

"We think the demurrer to the evidence as to the defendants Bruesch, the engineer, and Bennett, the brakeman, should have been sustained."

This same question was before the Kansas City Court of Appeals in Williams et ux v. Hines, Director General, et al. (Mo.) 229 S. W. 414. In that case the plaintiff had brought suit against the Director General and Charles Hall, the engineer in charge of the locomotive. Judgment was recovered against the defendants for $3,500, and on the appeal the question was raised for the first time that there was no joint liability. Upon this proposition the court said:

"Defendants insist under General Order No. 50, issued by the Director General October 28, 1918, there was no joint liability by them, hence that the action should be abated or not maintained. No authority is cited for this, no demurrer or other objection was taken at the trial, and the matter, if objectionable, was waived."

In Caldwell v. Payne, supra, it is true that the court said that the demurrer of the defendants Bruesch and Bennett, the engineer and brakeman, should have been sustained; but it will be noted that in that case the question was raised in the court below. It is said:

"The other defendants jointly and separately requested the court to instruct the jury that under the law and the evidence, the finding and verdict must be for the defendants and each of them, which was given as to the defendants railroad company, Stephenson and Camplin, and refused as to the defendants Bruesch and Bennett. Defendants Bruesch and Bennett asked the court to declare that under the law and proclamation of the Director General of Railroads that these defendants cannot be jointly sued with the Director General of Railroads or the Federal Agent. Which the court refused."

This must have been what the court referred to as defendant's demurrer which should have been sustained. Thus, the question was before the trial court.

In the case under consideration, the question was never presented to the trial court. For and on behalf of the carrier corporation the matter was presented to the trial court by the answer, but on behalf of defendant F. C. Kugler, no suggestion was ever made to the trial court that there was no joint liability of the Director General and the engineer.

We have examined the answer of Kugler, his demurrer to the evidence, his motion for a directed verdict and his motion for a new trial, and there is not a single word suggesting to the trial court that there was no joint liability of the Director General and Kugler. Kugler's demurrer to the evidence and his motion for a directed verdict raised no question except that of the insufficiency of the evidence to support the allegations of negligence set out in the petition. The motion for a new trial does not contain one word that could by any sort of means raise the question that there was no joint liability. Even if the plaintiff in error is correct in his construction of General Order No. 50, we think that the same would have the effect of creating in his favor a personal privilege or an exemption and that it was his duty to, in some way, present the matter to the trial court, and when he failed to raise the question in the court below, it cannot be raised for the first time on appeal. Such a claim does not present a question of jurisdiction that could arise either under our statutes or under the Federal Control Act. It rather, as we think, presented a question of personal privilege in favor of Kugler, which he might have taken advantage of or have waived as he saw fit, and in this case, even though his construction of General Order No. 50, be correct, he waived his right to claim the exemption afforded under the order, when he, for reasons of his own, failed to raise the question in the trial court. We think we are right in our construction of General Order No. 50, and if so, defendant was properly held under the local rule, as there was no personal privilege or exemption accruing to him under the order. If we are wrong, still, we must conclude that Kugler cannot now raise the question here for the first time.

The one other question argued in the brief of plaintiff in error is the question of the sufficiency of the evidence.

The negligence alleged, and upon which plaintiff relied to make out her case, was, (1) excessive speed; (2) failure to ring the bell; and (3) failure to blow the whistle.

It sems that the matter of excessive speed was either abandoned by the plaintiff, or the court took the view that the evidence did not warrant submitting the matter to the jury. The other elements of negligence were submitted to the jury by the court's instructions. It is admitted in the brief of plaintiff in error that there might have been evidence in the record to support the verdict of the jury that the engineer did not blow the whistle, so the inquiry will be here directed to the question as to whether there was any evidence before the jury on which they could base a conclusion that the engineer did not ring the bell.

It is not the province of this court to weigh the evidence. The weight of the evidence submitted was for the jury upon the trial. As to whether there was any legal evidence authorizing the trial court to submit the matter to the jury for their consideration is a question of law for the court.

We have searched the record in this case with great care, and we find we cannot agree with the plaintiff in error that there is no evidence in the record to support the conclusion that the engineer did not ring the bell. It is true that the statements of the witnesses relied upon are the statements of a negative, yet, the testimony is not, strictly speaking, negative testimony. When a witness was in a position to make observation as to whether a certain fact existed or a certain thing happened, and he testifies that he did not know of the existence of the fact or did not observe that the thing happened, such testimony is not. strictly speaking, negative testimony. That the witness did not know of the existence of the fact or did not observe the happening, coupled with the inability to know whether the fact existed or observe whether the thing happened, would render the testimony negative and of no probative force. But the evidence in this record was not of that class. One of the witnesses testified that it was a clear, hot day; no wind blowing; that his ability to hear is good; that he could hear the train coming, but did not hear the bell ring. Other witnesses testified along the same line. There was the ability to observe the fact and it was not observed. This was not negative testimony in the sense plaintiff in error contends, but it did have such probative force as to require the overruling of defendants' demurrer and the submitting of the matter to the jury. To have sustained the demurrer of the defendants to plaintiff's evidence would require the court to hold that there was no testimony tending to prove that the bell was not rung. Before we would be authorized to reverse this judgment upon this point, it must appear from an examination of the record that there was no testimony tending to prove that the bell was not rung. How can we say there is an entire lack of proof tending to show that the bell was not rung, when witnesses testified that they were in a position to know whether the bell was rung, and that they did not hear it. The failure to ring the bell might never be proven, if proof that witnesses were in a position to hear and that they did not hear it ring, is not to be accepted. We think that proof of the failure to ring the bell, made in the manner herein done, is competent and required the trial court to submit the matter to the jury for its determination.

In this case, the jury, by agreement of opposing counsel, was permitted to go to the scene of the accident and view the surroundings and at the instance of plaintiff in error, special interrogatories were propounded to the jury as folows:

"Interrogatory No. 1. Did the defendant, F. C. Kugler, engineer on the passenger train, blow the whistle, or cause same to be blown as required by statute, for the crossing where the accident occurred?

"Interrogatory No. 2. Did the defendant, F. C. Kugler, engineer on the passenger train, ring the bell or cause the same to be rung, as required by statute, for the crossing where the accident occurred?"

Both of these interrogatories were answered by the jury in the negative, and we cannot say that there was an entire lack of evidence to support their conclusion. The general verdict and the negative answers to the interrogatories were, in effect, a finding that the failure to give the signals was the proximate cause of the injury.

There are other errors assigned arising in the course of the trial and by the motion for a new trial, but they are not argued in the brief of plaintiff in error and will be treated as waived. However, we have examined the record with the care that so important a matter merits and demands, and have concluded there is no error in the record requiring a reversal of the judgment.

Under the Transportation Act of 1920, it was provided:

"Actions—of the character above described, pending at the termination of federal control shall not abate, by reason of such

termination, but, may be prosecuted to final judgment, substituting the agent designated by the President."

This case is one of the class of cases referred to. The cross-petitioner, John Barton Payne, is the agent designated by the President under this act of Congress. The said John Barton Payne will now be substituted as the Federal Agency for the Director General against whom this cause was begun and prosecuted.

The judgment in this cause should be affirmed against John Barton Payne as Federal Agent, in his representative capacity, and against the plaintiff in error, F. C. Kugler, and we recommend that the same be done.

By the Court: It is so ordered.