MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE, v. HOLMES.

4-5337                                    124 S. W. 2d 14

Opinion delivered January 23, 1939.

*Thomas B. Pryor, David R. Boatright* and *W. L. Curtis,* for appellant.

*R. E. Hough* and *Batchelor & Batchelor,* for appellee.

BAKER, J.  In the presentation and discussion of the issues upon this appeal an effort will be made to follow the legal terminology of the courts of the state of Oklahoma, and, by way of explanation, to avoid confusion in regard to such legal terms wherein our courts have expressed a different meaning, necessary references will be made.

The death of the infant child, 18 months old, at Vian, Oklahoma, on October 10, 1937, by reason of having been struck by one of appellant's trains, became the basis of this suit.

The facts were substantially as follows:  While the parents of the child were temporarily away from home the child was left in custody of Unice Brown, its grandmother, who, after dressing the child on the morning of its death, left it at play in one room of her home while she went about the duties of her household.  After perhaps ten or fifteen minutes, absence of the child was discovered, and a search revealed its body beside the railroad track a short distance away.  The grandmother's property, in which she lived, was near or about the middle of a long block south of the right-of-way of the railroad, which at that point was 150 feet wide.  If McConnell Street, which formed the western boundary of the grandmother's home, had been extended north and over across the railroad property, it would have crossed the railroad track at or near the place where the child was killed.  From one side of the long block, beginning on Unice Brown's property, there was a trailway or well worn pathway across the railroad's right-of-way to the north side thereof.  This path was and has been in general use

for fifteen years or more by pedestrians who desired to avoid the longer walk around and through the open streets at the ends of the block. The business section of Vian lay north of this point, which tended to make this crossing a popular one.

The railroad company and its employees, including those operating its trains, knew of this pathway, and its constant and habitual use. In truth, the railroad company had put up on this path, on the north and south boundaries of its property, "NO TRESPASSING" signs. Nothing else was done, however, to prevent the continued use of the trailway.

We are advised that under the laws of Oklahoma railroad companies are not required to fence their rights-of-way in cities and towns, and perhaps that is about all else that might have been done.

Although the child's body was not mangled, it was picked up near the track, and circumstances were admittedly such as to indicate it had been struck by a train, which, but a few minutes before, had passed, going south. Therefore, the sufficiency of the evidence concerning the cause of death is not questioned. From a judgment in favor of the parents of the child comes this appeal.

The appellant challenges the propriety of the verdict of the jury, and consequent judgment, upon several grounds stated in the brief, including objections to several instructions, most of these objections may be said to be to the instructions *en masse,* and, since some of these objections are not tenable, it would be a waste of time and effort to sort out and discuss the more doubtful ones. Besides, we think our conclusions upon the whole case, arising out of issues fairly and fully presented, obviate the necessity of a discussion of any propositions except those we deem of vital importance. In this presentation, we will state such further facts as may be deemed necessary to an understanding of the propositions of law that may be involved.

Oklahoma has no statute similar to the Arkansas lookout statute, but there is a recognized duty resting upon operatives of trains "to exercise ordinary and reasonable care to operate the train at a reasonable speed,

commensurate with the physical surroundings and the probability that persons may be upon the tracks at that point (the footpath, in this case), and consistent with the practical operation of the defendant's train." The quoted portion of the above statement is from an instruction the principal or real objection to which is that the court should have directed a verdict for appellant, instead of giving same.

In addition, we should add that in that jurisdiction there is no presumption of negligence arising out of an injury caused by the operation of a train. Instead of such presumption, the courts have consistently announced that negligence is not and will not be presumed, but must be established by proof.

It is, perhaps, better, at this point, to say that the Oklahoma courts have given to the term or word "licensee" the same meaning we give to "invitee" in our courts, and what we have been characterizing as a "licensee" Oklahoma jurists designate as a "bare licensee." Distinctions in terminology appear from our definitions in some of our decisions. *Armour & Co.* v. *Rose,* 183 Ark. 413, 36 S. W. 2d 70; *Arkansas Short Line* v. *Bellars,* 176 Ark. 53, 2 S. W. 2d 683.

Appellees, in support of the judgment, insist that, under proper instructions, the jury has found that the child was a licensee, and that due regard to that status required the employees of the railroad company to approach and pass the point where the accident occurred in expectation that some one would be upon the intersection of the path and railroad track. Only because both parties seem to have treated this matter concluded by the verdict of the jury as if it should be interpreted under the laws of Oklahoma, do we refrain from declaring that the law of the forum is that a licensee may not be willfully or wantonly injured after a discovery of his peril. Since the law of the forum declares him a licensee, it might well award the remedy suitable to that status.

Since we prefer to decide the issues upon their merits, and, since counsel for appellant seem to have regarded this term "licensee" upon the trial below and in briefing the case as a chosen expression in legal terminology of

our sister jurisdiction as tantamount to our "invitee," we pass to other propositions.

Only two people saw and were able to relate any facts in regard to the accident, telling how and where it occurred. Wash Downing was 75 yards away. He saw the child standing, facing the railroad track, at the trail, as the train approached about 30 feet distant from it. The child was crying. The witness turned away to avoid seeing the deadly impact. Quinton Barnes, a negro youth 14 years of age, testified to the same facts as were stated by Downing, except that he does say the child was near the path. Although Barnes was strongly contradicted, we accept his statement as true, as found by the jury, together with the reasonable inference, that the child was near the pathway where it crossed the railroad.

The engineer and fireman both testified. The effect of the fireman's testimony was that he was keeping a lookout on the morning in question when the train went through Vian. It was not necessary for him to leave the seatbox in the performance of his duties as fireman, as the fire was kept up by a stoker. That in the performance of his duties he was watchful as they went through cities and towns. That he did not see this small negro child at any place on that morning. He was upon the left-hand side of the engine, or north side, as the train proceeded on its way through Vian. He says that the train might have been stopped in seven hundred or eight hundred feet in an emergency. That they had no knowledge of having struck the child and killed it until they were notified of that fact when they reached Greenwood Junction. He suggests, however, that if the child was back behind the stock pens or where there was some vegetation, it could have approached the track after the engine had passed and been hit by some portion of the train other than the engine.

The engineer's statements were not essentially different in material matters from the fireman's, except that he was on the right-hand side of the engine which is the opposite side from the one on which the child was seen by Barnes and Downing. The proof does not make clear whether the engine was one of those large types such that

the engineer might not have seen a small object like this child if it had been near the track as the train approached the point where it was struck and killed. The engineer, however, states that he saw Mr. Harp, the section foreman, recognized him, although he did not know his name, and that they waved at each other as the train went on its way.

It is argued by appellees that this fact testified to by the engineer and verified by Mr. Harp who states the same fact, was one that justified the jury in finding the operatives of the train negligent in failing to keep a proper lookout at the intersection of this pathway with the railroad track. The conclusion reached by counsel in this argument is that, at the very moment the engineer was observing Mr. Harp, had he been looking upon the railroad track, he would have most likely observed this child in a perilous or dangerous situation. According to the plat, that was barely 200 or 300 feet west of the trail. That argument might be sound, but, if it is, it does not explain why the fireman did not see the child at the same time and place. At most, this conclusion from the circumstances must be regarded as speculation, not supported by any evidence and not a reasonable inference from any testimony in this record.

A statement with many more details could possibly be made; but the foregoing gives the material and essential facts from all the evidence, and we think it unnecessary to elaborate or set forth matters in greater detail. The plaintiffs below relied on the negligence of the operatives of the train by running it at an excessive speed through the town of Vian, and, second, the failure to keep proper lookout for persons who might be at the intersection of the trailway and railroad track in that town.

Before we begin to analyze the cases from the Oklahoma jurisdiction, we make this comment in regard to the speed of the train. There is no evidence tending to show that forty miles per hour was an unusual speed for trains operated in that locality, nor was there any evidence of any particular condition, on that occasion or time of day, that required a slower rate of speed. We understand perfectly that it might be argued that the

train should have been operated at a speed such that the train could have been stopped, had an emergency occurred, in order to prevent an accident. That argument is unsound, and its mere statement is its contradiction, for probably no train is ever operated but that it might be moved so slowly that no accident would ever occur.

We have purposely refrained from a discussion of many of the interesting propositions of law that have arisen, mentioning only those, so far, that have appeared necessary to a complete understanding of the facts in the case. We shall attempt to dispose of the several questions without following any regular or fixed order, but as these matters are presented in the authorities we expect to use.

The appellant argues, as a proposition to justify a directed verdict, that the grandmother, Unice Brown, who had charge of the child, was guilty of contributory negligence, and, since she was the agent of the child's parents into whose care the child had been given, her negligence should be imputed to them. However sound that legal conclusion may appear, the answer thereto is found in art. 23, § 6, of the Constitution of the state of Oklahoma. The effect of this is that the defense of contributory negligence, or of assumption of risk, shall in all cases whatsoever be a question of fact, and shall at all times be left to the jury. This declaration of policy of that state by its Constitution needs no discussion or elaboration. *Dickinson* v. *Cole,* 74 Okla. 79, 177 Pac. 570.

In the case cited, there was also a discussion by the court of a proposition of the speed of trains. It was held there that, inasmuch as the speed of the train was in excess of a rate prohibited by a city ordinance, such fact would constitute negligence *per se.* In the case under consideration there is no ordinance or statute fixing or intended to fix or determine the rate or speed of trains at the time and place of the accident.

One of the cases cited and discussed by counsel for both appellant and appellee is that of *Missouri, K. & T. R. Co.* v. *Wolf,* 76 Okla. 195, 184 Pac. 765. It was there held that to constitute actionable negligence where the wrong was not willful three essential elements were nec-

essary. (1) The existence of a duty on the part of the defendant to protect the plaintiff from injury, (2) failure of the defendant to perform that duty, and (3) injury of the plaintiff resulting from that failure.

In that case there was also an announcement of the principles of law controlling situations such as we have under consideration. It was announced therein that the railroad company is bound to exercise special care and watchfulness at any point upon its tracks where people may be expected in considerable numbers as where the road-bed is constantly used by pedestrians. At such places the railroad company is bound to anticipate the presence of persons and to keep a reasonable lookout for them. It was in this particular case that the court announced the policy of the state to be in conformity with the announcement of Thompson on Negligence, second edition, § 1726, rather than to continue to follow the view expressed by Elliott on Railroads, second edition, § 1250.

Because we think it would unduly extend this opinion we do not attempt here to set up or discuss this new policy as announced in that case, but we do keep it in mind in the determination of the issues involved in the instant case In passing, we venture to remark that this is one of the cases in which it was held that negligence relied upon for a recovery must be established by proof and that reasonable inferences only may be deduced therefrom as distinguished from any presumption of negligence arising out of the injury from the operation of the train.

Upon this same point concerning the establishment of negligence by proof there are no doubt many Oklahoma authorities, and, since we think that almost any case from that jurisdiction upon that subject is sufficient, we venture to call attention to the case of *Chicago, R. I. & P. Ry. Co.* v. *Pedigo,* 102 Okla. 72, 226 Pac. 72. We find that the first headnote in that case is to this effect: A railroad company will not be held liable for persons injured where there is no positive evidence or reasonable inference to be drawn from the testimony that the railroad company was guilty of negligence.

Because it would unduly extend this opinion we must content ourselves with the bare announcement as in the foregoing without attempting more elaborate statement of facts upon which it is based. We think, however, the conclusions of the court as announced to the effect that in any case, under the facts stated where there is no valid ground to establish negligence and the inference of negligence on the part of the employee is lacking, the verdict of the jury upon the unproven primary negligence of the railroad company should not be allowed to stand. The principal is exceedingly well stated in above citations. Numerous other authorities are cited by the court sustaining the position. Our attempt at further discussion would not add to these well considered and elaborately stated principles. We suggest that the court in this case held, as we often have in our courts, that a verdict rendered solely upon conjecture will not be permitted to stand.

The Supreme Court of Oklahoma in a comparatively recent case has set out with somewhat minute details the principles involved in a matter not essentially different from the one we have under consideration. A mere glance at the facts indicates that the same principles of law arising therein have been discussed by counsel in the instant case. An infant was killed at the intersection of a path with the railroad tracks under similar facts to those presented here. One of the principle questions with which we are interested in the instant case is the sufficiency of the evidence to establish negligence. That matter was there elaborately discussed. Numerous authorities were cited and reviewed and the conclusion was reached and the announcement of the law proclaimed as determining the rights of parties therein fits this case like a stocking-cap and covers it as to every essential issue. *Midand Valley R. Co.* v. *Kellogg,* 106 Okla. 237, 233 Pac. 716.

We take the liberty to say that the court there announced that ''to sustain the verdict we will have to presume that the employees of the company did not maintain a proper lookout, or if they did maintain proper lookout they did not attempt to stop the train in time to

keep from striking the child and we have to further presume that the train could have been stopped in the exercise of ordinary and reasonable care before striking the child.'' The court then announced that the verdict is based upon conjecture and that negligence cannot be inferred, but must be proven and that such negligence when proven must be the proximate cause of the injury.

So in this case there is no evidence that, as the train approached the crossing of this pathway, the child was where it could or might have been seen. The evidence is to the effect that it was not seen. That a lookout was kept. Speculation, however plausible, cannot supply a lack of evidence.

In a much more recent case, *Missouri, K. & T. R. Co.* v. *Sowards,* 165 Okla. 214, 25 Pac. 2d 641, we find the Okahoma court announced the same principles, citing some of the same authorities and reaching the same conclusions upon identical facts as in other Oklahoma cases, some of which we have already cited. It was there held that the authorities cited, such as the Wolf Case, *supra,* and Wilhelm Case, *Wilhelm* v. *M. O. & G. R. Co.,* 52 Okla. 317, 152 Pac. 1088, L. R. A. 1916C, 1029, discussed therein were binding upon the court. All these cases are binding upon us in attempting to declare the law in determination of the rights of Oklahoma citizens who have appealed to our courts in this controversy. It is conceded by all parties herein that the rights of the litigants who have invoked the aid of our courts are fixed and determined by the laws of Oklahoma, and only in so far as procedure is concerned do the laws of Arkansas prevail in the controversy. The foregoing authorities have been consistently followed by the Oklahoma courts. Some of the later cases cite the ones we have used here. *Blackwell* v. *Miller,* 181 Okla. 348, 73 Pac. 2d 852.

We suggest to those interested that some of the matters have been discussed in 112 A. L. R. 850 in an elaborate annotation. Perhaps it might be well to call attention to one other Oklahoma case, *Chicago, R. I. & P. R. Co.* v. *McCleary,* 175 Okla. 347, 53 Pac. 2d 555, in that case the Wilhelm and Kellogg Cases particularly were

cited with approval. There is found also a discussion in regard to licensees, trespassers, etc.

In conclusion, we hope it has been made clear in our discussion and statement of the differences in terminology in the respective jurisdictions of Arkansas and Oklahoma, that we have intended no adverse criticism of our sister jurisdiction. We have attempted to make clear rather the difference in the use of the words discussed so that there may not be any misunderstanding by any of the Arkansas courts or lawyers, who may have occasion to read this opinion.

Doubtless the reader has already drawn the conclusion from a consideration of the valuable announcements and declaration of the Oklahoma courts upon the proposition discussed, that there is no substantial evidence of negligence as the proximate cause of the injury and death of the child. That only by conjecture and speculation may the verdict be supported. This cannot and will not be permitted. We have deemed the case fully developed and have attempted to make very reasonable inference from the proof presented and no advantage could arise out of a new trial.

The judgment is, therefore, reversed and action dismissed.