MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE, v. HOWARD.

4-6737                                            161 S. W. 2d 759

Opinion delivered May 11, 1942.

254

*Henry Donham* and *Pat Mehaffy,* for appellant.

*G. W. Lookadoo* and *J. H. Lookadoo,* for appellee.

McHANEY, J.   Appellee brought this action against appellants, the railroad company and its trustee in bankruptcy, to recover damages for personal injuries she alleges she sustained as a result of a collision between passenger train No. 18 of appellants and an automobile she was driving, on the Main street crossing, in the town of Gurdon, Arkansas, about 6:30 p. m., June 11, 1941. She had been driving south on highway 67, and when she came into Gurdon she turned east on highway 53, which crosses the railroad tracks and leads into the business district over the Main street crossing. A string of box cars was spotted on a passing or side track west of the main line and within four to six feet of the crossing, and it is alleged that these cars cut off her view of train No. 18, approaching from the south, until, while driving very slowly in second gear, she had reached a point too close to the main line track to stop before getting on the track in front of said train, so she gave it the gas in an unsuccessful effort to get across. The train was traveling at from 15 to 20 miles per hour and was in the act of coming to a stop for the station just north of the crossing. The train or some portion of it struck or caught the rear bumper of the car and pushed or knocked the back end of the car north some five or six feet without turning it over and, apparently, without doing it much damage, as appellee drove away from the scene of the accident.

Her brother-in-law, riding with her, later took the wheel and drove her to the office of a physician, where she was examined by Dr. McLain who testified she had not been injured in the accident. The negligence alleged was failure to give the statutory signals, failure to have a flagman on the crossing and failure to have other signals of the approach of said train, and that the trainmen operated said train up to and over said crossing without giving any signal, knowing said string of box cars would obstruct the view of persons going over said crossing from the west to the east. She alleged as damages that her "entire nervous system was greatly damaged and upset"; that she had "suffered great and excruciating pain and mental anguish" and will "for a long time to come"; and that her "injuries are permanent and lasting." She prayed for $3,000 damages. The answer was a general denial and a plea of her own carelessness and negligence. It alleged that the crossing was protected by a flagman who warned her of the approaching train, and that it was protected by an electric gong and wigwag signals which were sounding and working.

Trial to a jury resulted in a verdict and judgment for appellee for $1,000 and this appeal followed.

Appellee is not a new litigant in this court to recover damages for personal injuries. In *Mo. Pac. Transportation Co.* v. *Howard,* 201 Ark. 6, 143 S. W. 2d 538, she recovered a judgment for $12,000 against the transportation company in the Nevada circuit court for total and permanent disability. That case was reversed for the reasons there stated.

Appellee, Stockton and two other witnesses testified to the effect that the train gave no signals of its approach, by ringing the bell or blowing the whistle; that they saw no flasher signal lights, although it is undisputed that there are four such lights on that crossing; that such lights are red and work by electricity, when there is a train on the track within a half mile of the crossing, by automatic control; that these flasher lights were inspected by the signal man, Mr. Sandridge, on the 10th and were again inspected by him ten or fifteen min-

utes after the accident, and they were found to be in proper working condition; and that they saw no flagman on the crossing who tried to stop them. Of these four witnesses, one was the appellee; another was her brother-in-law, riding with her, who also sued for damages, but failed to recover; another was a discharged employee of appellants and the other was a man from Prescott who is well acquainted with appellee and Stockton and is a good friend of her brother. Only two of them may be said to be disinterested witnesses. In contradiction of the testimony of appellee, Stockton and her two other witnesses, appellants introduced 19 witnesses, seven of whom were employees, and 12 of whom were apparently wholly disinterested in the result of the lawsuit, who testified either that the bell was ringing or that the whistle was sounded for this particular crossing or that the flasher signals were working or that Sullenberger, the flagman, was flagging the crossing and attempted to stop appellee and Stockton to keep them from driving on the track in front of the oncoming train, and that they nearly ran over him, so desperate was his attempt to stop them. Twelve of these witnesses swear that the automatic bell was ringing, thirteen that the whistle blew for this crossing and the one south of it, eleven that the flasher signals were working, and seven, including Sullenberger, that he was on the crossing, attempted to flag appellee, and that he was nearly run over by her in attempting to get her to stop. One of these witnesses, Leon Woods, an employee of the Southern Ice Company at Gurdon, testified that he was about half way between the depot and the crossing when the accident happened; that he heard the bell ringing; that the flasher lights were working; that some one was out there flagging the crossing, but the car did not slow up, although it was flagged in plenty of time to stop and the car nearly ran over the flagman and he jumped to get out of the way; and that the whistle blew for both crossings. In addition to all this direct and positive testimony, the approaching train was making a lot of noise and the locomotive was emitting smoke. Stockton made a written statement shortly after the accident on the same day in which he said he saw the

smoke over the top of the box cars spotted near the crossing and called to appellee to stop, but she said she could not and attempted to get across ahead of the train.

The jury by its verdict has found that all this evidence by appellant's witnesses is false and that the preponderance of the evidence shows that the whistle was not blown, the bell not rung, the flasher signal lights not working, no flagman on the crossing and that the train was not making sufficient noise to warn appellee and Stockton of its approach. Just how this jury, or any other fair minded jury, could have reached such a verdict, or that the court could have refused to set it aside because clearly against the great preponderance of the evidence, is difficult to understand.

We think appellee and her passenger were clearly guilty of negligence, even though it be conceded that the signals were not given, the flasher lights not working and that the flagman was a mythical Mandrake man who could not be seen. The very fact that box cars were spotted so near the crossing, as to cut off the view to the south, made it her duty, in the exercise of due care, to approach the main line track in such a way as to permit her to get a clear view to the south after the box cars ceased to obstruct her view and to stop, if necessary, to avoid the danger. In other words, as the danger increases, the degree of care required to free one of contributory negligence in a crossing accident increases. As said in *L. & A. Ry. Co.* v. *Ratcliffe,* 88 Ark. 524, 115 S. W. 396: "There is no imperative duty resting upon him to stop and look and listen. The duty is to look and listen. If this cannot be properly discharged without stopping, then he must stop. If it can be, then there is no necessity of stopping. *St. Louis, I. M. & S. Ry. Co.* v. *Martin,* 61 Ark. 549, 33 S. W. 1070." See, also, *St. L. & S. F. Ry. Co.* v. *Stewart,* 137 Ark. 6, 207 S. W. 440; *St. L.-S. F. R. Co.* v. *Whitfield,* 155 Ark. 560, 245 S. W. 323; *Mo. Pac. Rd. Co.* v. *Hancock,* 195 Ark. 414, 113 S. W. 2d 489, and cases therein cited. Of course, under our statute, § 1213 of Pope's Digest, contributory negligence is not a complete defense, except where it equals or exceeds that of the carrier. The question is, Did this negligence of appellee

equal or exceed that of appellants, conceding their failure to give the signals? If appellee could not see to the south until it was too late to stop, it was her plain duty to stop and look and listen to determine whether danger was imminent. Had she stopped, before reaching the main line track, she could have heard the train, and had she looked after easing by the obstruction she could have seen it. It was there, making a loud noise, whether the whistle was blown or the bell rung, and signals cease to be factors where the presence of the train is plainly discoverable by other means. Thus her own negligence was the proximate cause of her injury, if any, which is doubtful.

We conclude, therefore, that appellee's negligence, under the circumstances here presented, equaled or exceeded that of appellant's, assuming that they were negligent in failing to give the signals, and that the judgment should be reversed and the cause dismissed.

It is so ordered.

MEHAFFY, J., not participating. HUMPHREYS, J., dissents.