MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON,
TRUSTEE *v.* DIFFEE.

4-8246                                              205 S. W. 2d 458

Opinion delivered October 13, 1947.
Rehearing denied November 24, 1947.

56

*Thomas B. Pryor* and *Thomas Harper,* for appellant.

*Wall & Green* and *Partain, Agee & Partain,* for appellee.

Ed. F. McFaddin, Justice. This is a railroad grade crossing case. On November 22, 1945, Bobby Dale Diffee, then 18 years of age, attempted to drive his automobile north on Oak Street in Salisaw, Oklahoma, across the main line track of the Missouri Pacific Railroad Company. His car was struck by the engine of a west-bound passenger train, and was carried about 300 feet before the train stopped. Young Diffee sustained injuries, the nature and extent of which will be discussed in topic III, *infra.* This action was filed in Crawford County, Arkansas, by Jeff Diffee to recover damages for himself as parent. He also sued as next friend for the minor, to recover damages for the injuries sustained by Bobby Dale Diffee. The father and son are the appellees here. The defendants below—and appellants here—are Missouri Pacific Railroad Company (by its trustee), and the engineer and fireman of the locomotive that struck young Diffee's car.

The collision occurred in Oklahoma, and the actions were brought in Arkansas. According to the well-established rule, the law of Oklahoma governs as to substantive rights, and the law of Arkansas governs as to procedural rights. *Crown Coach Co.* v. *Whitaker,* 208 Ark. 535, 186 S. W. 2d 940 and cases and authorities there cited. See, also, *St. L. S. F. R. Co.* v. *Cox,* 171 Ark. 103,

283 S. W. 31, and Leflar on Conflict of Laws, page 197; and 11 Am. Juris., 498. This rule is conceded by both sides in this litigation. Some of the Oklahoma cases involving railroad crossing accidents are: *Mo. Pac R. Co.* v. *Merritt,* 104 Okla. 77, 230 Pac. 513; *M. K. & T. Ry. Co.* v. *Flowers,* 187 Okla. 158, 101 Pac. 2d 816; *Thorp* v. *St. L. & S. F. R. Co.,* 73 Okla. 123, 175 Pac. 240; *M. K. & T. Ry. Co.* v. *Perino,* 118 Okla. 138, 247 Pac. 41, 47 A. L. R. 283; *Dickinson* v. *Cole,* 74 Okla. 79, 177 Pac. 570; *M. K. & T. R. Co.* v. *Stanton,* 78 Okla. 167, 189 Pac. 753; *St. L. I. M. & S. R. Co.* v. *Gibson,* 48 Okla. 553, 150 Pac. 465; *Kugler* v. *White,* 91 Okla. 130, 216 Pac. 903; *St. L. S. F. Ry. Co.* v. *Rundell,* 108 Okla. 132, 235 Pac. 491; *Thrasher* v. *St. L. S. F. R. Co.,* 86 Okla. 88, 206 Pac. 212. In the case at bar there were judgments for each of the appellees; and in this appeal the appellants present the three contentions herein listed and discussed.

*I. Appellants Contend that They Were Free of Negligence, and Were Therefore Entitled to an Instructed Verdict in Their Favor.* The only allegation of negligence submitted to the jury was the defendant's alleged failure to give the statutory signals. Title 66, § 126 of Oklahoma statutes of 1941 reads: "A bell of at least thirty pounds weight, or a steam whistle, shall be placed on each locomotive engine, and shall be rung or whistled at the distance of at least eighty rods from the place where the said railroad shall cross any other road or street, . . ."

There were several witnesses who testified that these signals were not given. One was the plaintiff, Bobby Dale Diffee. Another was a disinterested witness, Thomas Scott. He testified that he was only a short distance from the crossing, and that he was looking directly at it and saw the train strike the car; and he said:

"The whistle didn't blow, and the bell didn't ring. It rang after it hit the car. Just as quick as it hit the car, I jumped out of my car; I got my keys out and opened the door of my place and called the ambulance. I knew they would need one.

"Q. You say that the train didn't whistle or ring a bell. Do you tell the jury that you were looking in that direction?

"A. Yes, sir."

Other witnesses testified to like effect; and we conclude there was sufficient evidence to take the case to the jury on the question of whether the statutory signals were given. *St. L. I. M. & S. Ry. Co.* v. *Kimbrell,* 117 Ark. 457, 174 S. W. 1183; *Mo. Pac. R. Co.* v. *Rogers,* 184 Ark. 725, 43 S. W. 2d 757; *St. L. S. F. Ry. Co.* v. *Rundell,* 108 Okla. 132, 235 Pac. 491.

II. *Appellants Contend That the Undisputed Proof Shows That Bobby Dale Diffee Was Guilty of Contributory Negligence, Which is a Bar to Recovery.* The State of Oklahoma does not appear to have a comparative negligence statute similar to our statute (§ 11153, Pope's Digest); and, so, in Oklahoma, contributory negligence is an absolute defense. Appellants claim that contributory negligence was shown by the undisputed proof, and they contend that an instructed verdict should have been given in favor of the appellants. Against this claim of appellants, the appellees answer that (a) the Constitution of Oklahoma forbids an instructed verdict in such a case, and (b) the facts here made a case for the jury. We notice these.

(a) The Constitution of Oklahoma (Art. 23, § 6) says: "The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact, and shall, at all times, be left to the jury."

Appellants say this constitutional provision relates to procedure only, and not to substantive rights, and that since the Arkansas law governs as to procedure, the quoted Oklahoma constitutional provision is not binding. Appellants ask us to overrule our cases of *Mo. Pac. R. Co.* v. *Miller,* 184 Ark. 61, 41 S. W. 2d 971, and *Mo. Pac. R. Co.* v. *Holmes,* 197 Ark. 576, 124 S. W. 2d 14, in which cases we held that Art. 23, § 6 of the Oklahoma Constitution created a substantive right, rather than prescribed a mere matter of procedure. Appellants insist that in

these cases we overlooked the two Oklahoma cases of *Independent Cotton Oil Co.* v. *Beacham*, 31 Okla. 384, 120 Pac. 969, and *Muskogee Co.* v. *Napier*, 34 Okla. 618, 126 Pac. 792.

In asking us to overrule our cases, the appellants cite us to *Hopkins* v. *Kurn*, 351 Mo. 41, 171 S. W. 2d 625, 149 A. L. R. 762, and *Bourestom* v. *Bourestom*, 231 Wis. 666, 285 N. W. 426. On the other hand, appellees insist that we adhere to our former holdings; and they cite *Caine* v. *S. L. & S. F. R. Co.*, 209 Ala. 181, 95 So. 876, 32 A. L. R. 793, wherein the Supreme Court of Alabama reached the same conclusion as that in our cases, *supra*. In the excellent briefs, filed by both sides, the respective contentions are ably argued; but we find it wholly unnecessary to discuss—much less decide—this contention, because of our holding on the factual issue now to be discussed.

(b) The facts here made a case for the jury. We give a brief review of some of the evidence. Young Diffee was driving his car north on Oak Street. He testified that, as he approached the main line track, his view to the east was partially obstructed by a string of railroad cars extending to within 15 or 20 feet of his car. Other witnesses said that the string of railroad cars extended to within 20 feet of Oak Street, while others estimated that the railroad cars extended to within 50 feet of Oak Street. In addition to the string of cars, there were also three small structures on the railroad right of way south of the main track and east of Oak Street; and it was testified that these also tended to obstruct the view to the east. Young Diffee testified that he brought his car to a stop 5 or 10 feet south of the main track; that he heard no signal; that he looked first to the east, and then to the west, and he saw no train approaching from either direction, and he then proceeded to cross the main track with his car in second gear at a speed of 5 or 6 miles per hour; and that after he was on the track, he saw—for the first time—a train approaching from the east, and that this train struck his car. It was shown that his car was still in second gear after the wreck.

Other eye witnesses substantiated Diffee's testimony. The witness, Thomas Scott, testified as regards Diffee's car:

". . . I was looking over there. This 'B' model car was going north, driving rather slowly and stopped just before he got to the tracks; and just as he started across the tracks the train hit him.. I didn't see the train until just before it hit him, because there were some boxcars along there."

The fireman of the train that struck Diffee's car said he saw the car slow down a few feet from the crossing; and then continue forward. Under this testimony as detailed, and other testimony in the record, we conclude that even under our own holdings, there was made a fact question for the jury, on whether young Diffee was guilty of any contributory negligence. *Smith* v. *Mo. Pac. R. Co.*, 138 Ark. 589, 211 S. W. 657; *St. L. I. M. & S. Ry. Co.* v. *Kimbrell,* 117 Ark. 457, 174 S. W. 1183; *Mo. Pac. R. Co. v. Shell,* 208 Ark. 70, 185 S. W. 2d 81, and cases there cited.

Finally, on this issue of contributory negligence, the appellants contend that all of the testimony offered on behalf of appellees should be discarded as contrary to established physical facts. In the recent case of *Alldread* v. *Mills,* 211 Ark. 99, 199 S. W. 2d 571 we had occasion to discuss such a contention; and many cases and treatises are there listed. Appellants offered in evidence pictures, diagrams and drawings designed to show that the west end of the string of boxcars on the switch track south of the main track was necessarily more than 100 feet east of the Oak Street crossing, because—as the appellants contend—if the west end of the boxcars had been closer than 100 feet to the Oak Street crossing, then the cars would have been on the switch that led into the main track, and would have been so close to the main track that the boxcars would have been struck by the passenger train. From this, the appellants argue that the physical facts (that is, the pictures, diagrams and drawings) disproved the testified facts, and that the physical facts must govern; and that Bobby Dale Diffee could

have seen the train approaching from the east if he had looked; and that he was thus guilty of contributory negligence as a matter of law.

We have examined the pictures, diagrams and drawings, and are impressed by the fact that there was a string of railroad cars and also three structures, and these certainly tended to obstruct the view of any train approaching from the east, whether young Diffee stopped as close as 5 or 10 feet from the main track, or whether he stopped 25 or 30 feet away. The fact that he stopped was testified to by witnesses, and the exhibits do not disprove such testimony. Furthermore, the testimony given by one of the appellants tends to dispute the deductions sought to be drawn from the exhibits. Appellant, W. F. Rogers, fireman of the locomotive, testified that he saw Diffee's car "a few feet from the crossing"; that Diffee slowed as though he was going to stop, but did not stop. Rogers said that the locomotive was 50 or 75 feet from the crossing when he first saw the automobile. He was asked, regarding the boxcars:

"Had you passed those cars on the side track when you saw the automobile?

"A.   I don't think so."

Rogers was a railroad man, and one of the appellants, and the effect of his testimony is to place the west end of the string of boxcars within 50 or 75 feet east of Diffee's car. His testimony substantiates the testimony of appellees, and other witnesses, and leaves questionable and for the jury the entire "physical fact" argument of the appellants.

III.   *Appellants Contend That, at All Events, the Verdicts Are Excessive.* The trial court rendered a judgment for Jeff Diffee in the amount of $1,000. This is not excessive. The testimony shows that the father paid, or is obligated to pay, $350 in doctors' bills, and that he was deprived of the services of his 18-year-old son from the time of the injury, and that the son had been rendering valuable services to the parent. The jury returned a verdict for Bobby Dale Diffee for $15,000. In *Mo. Pac.*

*R. Co.* v. *Newton,* 205 Ark. 353, 168 S. W. 2d 812, we reviewed some of the cases giving the rules whereby a verdict may be tested as to gross excessiveness.

Under the proof in this case, it is impossible for us to say, as a matter of law, that the verdict is grossly excessive. The testimony shows that the automobile was caught by the cowcatcher of the engine and was carried 300 feet, and that young Diffee was then taken from the wreck in an unconscious condition, and was hospitalized for two weeks in Fort Smith, and suffered great pain; that he sustained a concussion, four fractured ribs, and a punctured and partially collapsed lung; that he vomited blood for several days; that he has been unable to work as he did before the injury; and that he will always suffer some inconvenience from these aforementioned injuries.

The evidence shows that shortly before the injury, he had passed the draft board for acceptance into the armed forces of the United States, but his injuries incapacitated him so that he was never inducted. Dr. Bryan, a physician of Salisaw (whose qualifications, ability and integrity are admitted by the appellants) testified that young Diffee is now suffering with diabetes; and Dr. Bryan gave it as his expert opinion that the diabetic condition was caused by and was a result of the injuries sustained in the collision. The testimony thus satisfactorily met the test stated in *A. T. S. F. Ry. Co.* v. *Melson,* 40 Okla. 1, 134 Pac. 388, Ann. Cas. 1915D. 760, as to when medical evidence may go the jury on the question of disease resulting from injury. Dr. Bryan stated that the diabetic condition would materially interfere with the physical work that young Diffee had been previously accustomed to perform, and that the diabetic condition would grow progressively worse.

Appellants laid great stress on the fact that diabetes is caused by an abnormal condition in the pancreas; and the physician called by the appellants testified that young Diffee sustained no injury to the pancreas. It is admitted that traumatic diabetes is a rare occurrence, but we cannot say that it does not exist, when the text books and reported cases discuss traumatic diabetes. The vol-

ume, "The Relation Between Injury and Disease," written by Reed and Emerson, and published by the Bobbs Merrill Company in 1938, on page 79 says:

"Diabetes insipidus occasionally follows head injuries, especially fracture of the skull and bullet wounds which injure the base of the brain. Although as a rule it appears insidiously, yet cases which follow injuries and emotional crises may start acutely. In conclusion, it should be emphasized that trauma can be held responsible for those cases of diabetes insipidus alone which directly follow severe head injuries."

The cases and books make no distinction as to whether the traumatic diabetes is insipidus or mellitis in type. *Eicholz* v. *Niagara Falls Co.*, 73 N. Y. S. 842 (affirmed by N. Y. Ct. of Appeals, 66 N. E. 1107) is a very enlightening case which involved the question of traumatic diabetes and the sufficiency of the medical testimony to take to the jury the question of an injury causing the disease. In that case the plaintiffs' testator had been injured by the falling of earth into a trench in which he was working, and had been incapacitated from performing any work, and he developed diabetes. Experts for the plaintiff testified that the diabetes was the result of the injury. Experts for the defendant testified *contra*. The New York court said:

"It is also urged that the evidence upon the question as to whether or not diabetes resulted from the accident was so speculative and uncertain that it should not have been left to the consideration of the jury. In the first place, it should be remembered that the defendant first proved that plaintiffs' testator was suffering from diabetes, and in that way sought to account for the very serious condition which he was in at the time of the trial, and the opinion of its experts was to the effect that this disease was not caused by the accident. On the other hand, the experts called by the plaintiffs gave it as their opinion that the disease was due to the injury which plaintiffs' testator received. They admitted that diabetes might have been produced by a large number of causes, and that they could not state positively that in this case it was due to the injuries received, but from all the con-

ditions and circumstances, the fact that before the accident plaintiffs' testator was perfectly healthy and well, they expressed the opinion that the condition existing at the time of and prior to the trial was due to the injury, and that diabetes was caused thereby. Under the circumstances the jury was entitled to consider the evidence. The jury was instructed fully upon the proposition, and told that, before it allowed any damages because of such disease, it was incumbent upon the plaintiffs to satisfy them by a preponderance of evidence that such disease was caused by, or was the result of, the injury. The cases cited by appellants' counsel are not authority for a contrary holding in this case; certainly, the ruling of the court is supported by the decision in the case of *Bowen* v. *Railroad Co.*, 89 Hun, 598, 35 N. Y. Supp. 542. In that case the court said: 'The plaintiff at the time of the accident was seventeen years of age, in vigorous health, and in good physical condition. His injury was apparently severe. It was followed by certain conditions of physical impairment. It was competent to prove that they are consequences which may be attributed to the injury, and, in view of the fact that such conditions have been the result, the medical opinion is relieved from any imputation that it was speculative.' In the case at bar the injured party, prior to the accident, was, so far as known, in perfectly sound health. He was a strong, robust, vigorous man. No other cause for his condition as it appeared at the time of the trial, other than the accident, was known or could be suggested. It was competent for the expert physicians to testify that such condition was, in their opinion, the result of the injury.''

So, in the case at bar, Dr. Bryan's testimony as to the diabetic condition of young Diffee made a fact question for the jury, and with that evidence in the record before us, we cannot say, as a matter of law, that the verdict is grossly excessive.

Affirmed.

*On Rehearing.*

ED. F. McFADDIN, Justice. In the petition for rehearing, appellant argues three points, which we now list and discuss.

1. Appellant says that, in giving "a brief review of some of the evidence" in topic II(b) of the opinion, we omitted vital facts, the recital of which—according to appellant—would demonstrate the error of our holding. All the evidence that appellant wants recited bears on the question of whether young Diffee was guilty of contributory negligence. We held that the question of contributory negligence was for the jury; and the addition of the several pages of testimony as desired by the appellant would only serve to reinforce our conclusion, that the negligence question was for the jury.

2. Appellant says that we failed to cite and apply the case of *Mo. Pac. R. Co.* v. *Howard,* 204 Ark. 253, 161 S. W. 2d 759. We did not cite that case for two reasons: first, it was decided under our comparative negligence statute (§ 11153, Pope's Digest), and that statute is not applicable in this case, as we pointed out in the opening sentence of Topic II of our opinion; and, secondly, in *Mo. Pac.* v. *Howard, supra,* this court held as a matter of law that the negligence of the driver of the car exceeded the alleged negligence of the railroad company. In the case at bar we reached the conclusion that the evidence as to negligence and contributory negligence was substantial; and, hence, presented a question of fact for the jury.

3. Appellant objects to the citation and quotation from the volume, "The Relation Between Injury and Disease" by Reed and Emerson. Appellant says that no witness or lawyer mentioned the book, and it was not before the jury, and therefore this court should not have cited or quoted from the book. This volume has been in our Supreme Court Library since November, 1938. It is in the section of books dealing with medical jurisprudence, a subject discussed by the appellant. We regard the book as standard, and of general interest. We quoted from it just as we would have quoted from any other

reference book in our library, and just as we did quote from the reported case of *Eicholz* v. *Niagara Falls Hydraulic P. & Mfg. Co.*, 68 App. Div. 441, 73 N. Y. S. 842. The evidence showed that young Diffee suffered a severe shock, and was unconscious from the time of the injury until after he reached the hospital in Fort Smith. This evidence made entirely appropriate quotation from the Reed and Emerson volume.

The petition for rehearing is denied.